**UNITED STATES of America, Appellee,**

v.

**Alvin BEIGEL, Joseph Lapi and Anthony Verzino, Appellants.**

**No. 188, Docket 30678.**

United States Court of Appeals Second Circuit.

Argued Nov. 18, 1966.

Decided Jan. 9, 1967.

Eugene Feldman, New York City (Jaffe & Feldman, New York City, on the brief), for appellant Beigel.

Frank A. Lopez, Brooklyn, N.Y. (Rosenberg & Lopez, Brooklyn, N.Y., on the brief), for appellant Lapi.

Joseph I. Stone, New York City (Stone & Diller, New York City, on the brief), for appellant Verzino.

Andrew M. Lawler, Jr., New York City (Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, Lars I. Kulleseid and John E. Sprizzo, Asst. U. S. Attys., on the brief), for appellee.

Before WATERMAN, MOORE and HAYS, Circuit Judges,

HAYS, Circuit Judge:

Appellants Alvin Beigel, Joseph Lapi and Anthony Verzino were convicted of violating 21 U.S.C. §§ 173, 174[1] and conspiring to violate those sections as well as 26 U.S.C. § 4705(a).[2] The case was tried to the court sitting without a jury and the opinion of the trial judge is reported at 254 F.Supp. 923 (S.D.N.Y. 1966). Two other defendants were charged in the same indictment. One, Anthony Cutillo, was acquitted. The other, Vincent Soviero, has not yet been apprehended and the counts against him were severed before trial. The principal contention of all three appellants is that certain contraband introduced in evidence was illegally seized from Beigel and should have been suppressed. Lapi and Verzino also challenge the sufficiency of the evidence on which their convictions are based and Verzino contends that he was denied his constitutional right to a speedy trial. We find no error and affirm the convictions.

In August, 1962 agents of the Federal Bureau of Narcotics and detectives of the New York City Narcotics Squad began surveillance of the activities of appellants.

---

1. § 173.  *Importation of narcotic drugs prohibited; exceptions; crude opium for manufacture of heroin; forfeitures.*
  It is unlawful to import or bring any narcotic drug into the United States or any territory under its control or jurisdiction * * *.
  § 174.  *Same; penalty; evidence.*
  Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. For a second or subsequent offense (as determined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned not less than ten or more than forty years and, in addition, may be fined not more than $20,000.
  Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury.

2. § 4705.  *Order forms.*
  (a) *General requirement.*
  It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate.

On February 5, 1963 the following conversation between Verzino and an unidentified John Doe was overheard:

Verzino: I told him $5500, no less.

John Doe: You know you have to be careful in this business.

Verzino: I feel sorry for Louis.

John Doe: Louis who?

Verzino: Louis Gold, that Puerto Rican that got jammed up. I took care of him before he got busted.

Soviero then arrived and John Doe asked him, "Is it in the same place, in the ashtray?" Soviero replied, "Yes, right behind the ashtray," whereupon Doe said, "I will see you tomorrow with the money."

A short time later Doe entered a parked car a few blocks away, reached down under the dashboard and then drove away. The other two men went to a nearby bar where the following conversation was overheard:

Verzino: For that guy we charge 7500.

Soviero: That's right. Did Al mix the stuff good?

Verzino: Yes, he mixed it three to one and it's still dynamite.

In the argot of narcotic traffickers the phrase "three to one" indicates that the heroin ("stuff") has been diluted three parts of adulterant to each part of heroin and "dynamite" indicates the high quality of the drug.

On February 21, 1963 Verzino and Sovieri were observed with appellant Alvin Beigel at the Manhattan coffee shop where the February 5th meeting had occurred. Shortly after they left, they were joined by the John Doe who had participated in the earlier meeting. Verzino went with Doe to a parked car, opened the trunk and handed Doe a package. Beigel then drove off in a car identified as the one which Doe had driven on February 5th. Later that evening Verzino, Soviero and Beigel were again seen engaged in a brief conversation.

Federal agents and New York City detectives continued surveillance of all the defendants during the next several days. On February 28th, Verzino and Soviero were again overheard in a New York bar:

Soviero: I called his place and left a message for him in case he calls. I told him to stay where he is and Al will meet him and deliver—bring the stuff.

Verzino: Suppose he leaves?

Soviero: He will probably go to his place and she'll tell him to go back.

Verzino: How come Al is late?

Soviero: He had that delivery at 8 o'clock.

About an hour and a half later Beigel, whose activities had been under fairly constant observation that day, joined Soviero and Verzino.

On March 14th the agents followed Beigel who was driving a rented 1963 Rambler, to 37–41 79th Street in Queens; by tracing a fluorescent powder that they had placed on the door handle of the Rambler, they determined that Beigel had entered apartment 2C.

At about 7:30 on the evening of March 21, 1963 the government agents observed another Rambler automobile, parked on York Avenue in Manhattan between 60th and 61st Streets. Beigel had also rented this car. Soon thereafter Verzino and Soviero were seen driving down York Avenue. As their car approached the parked Rambler it came to an almost complete stop, and they were seen to look in the direction of the Rambler before continuing on their way.

At about 8:30 P.M., appellant Lapi entered the Rambler and drove it, taking a circuitous route, to 58th Street off Sutton Place. He proceeded on foot to the Cheer Club, located on 2d Avenue between 57th and 58th Streets and was observed for the next few hours walking in and out of the Club as though looking for someone. Shortly after midnight Lapi conversed briefly with the driver of a car parked nearby and then entered the back seat. The car was driven to the vicinity of the parked Rambler, where the driver was observed handing a brown paper bag

to Lapi who walked over to the Rambler and placed the package in it.

Surveillance was maintained on the Rambler and at approximately 2:00 A.M. Beigel was observed to enter the car and drive off. He parked the car near 37–41 79th Street, got out and went into that building carrying the brown paper bag that the agents had seen Lapi place in the Rambler earlier. When Beigel had inserted his key in the lock of the door to apartment 2C and was about to enter, he was placed under arrest. The brown paper bag contained 2920 grams of heroin. In the apartment the officers found a suitcase containing two kilograms of heroin and an assortment of narcotic cutting and packaging equipment.

## I.

Beigel contends that the contraband was illegally seized and should have been suppressed; Lapi and Verzino failed to raise this objection below but join in Beigel's argument on this appeal.

Both Judge Palmieri, who conducted a pretrial suppression hearing, and Judge Weinfeld, who presided at the trial, found that Beigel's arrest was lawful since the activities which the participating officers, federal and state, had observed and the conversation which had been overheard provided ample probable cause for believing that Beigel had committed, and was committing, a felony. See 26 U.S.C. § 7607(2); New York Code Crim.Pro. § 177. The search of Beigel's person and the consequent seizure of the brown bag containing heroin were incidental to this lawful arrest and therefore valid. See, e. g., Draper v. United States, 358 U.S. 307, 310–311, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); DiBella v. United States, 284 F.2d 897 (2d Cir. 1960), rev'd on other grounds, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962).

The search of the apartment presents a different question. Had the officers not arrested Beigel until after he had entered the apartment, the seizure of the additional contraband would have been clearly lawful. See United States v. Rabinowitz, supra; Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145 (1925); Carlo v. United States, 286 F.2d 841 (2d Cir.), cert. denied, 366 U.S. 944, 81 S.Ct. 1672, 6 L.Ed.2d 855 (1961). However, it appears from Judge Weinfeld's opinion that in finding Beigel guilty he did not rely on the evidence seized in the apartment but on other evidence which fully supports Beigel's conviction.[3] Therefore we need not decide whether the fact that Beigel was arrested while still outside his apartment renders the search unlawful. See United States v. Mont, 306 F.2d 412, 415 (2d Cir.), cert. denied, 371 U.S. 935, 83 S.Ct. 310, 9 L.Ed.2d 272 (1962); Williams v. United States, 260 F.2d 125, 128–130 (8th Cir. 1958), cert. denied, 359 U.S. 918, 79 S.Ct. 596, 3 L.Ed. 2d 579 (1959); Clifton v. United States, 224 F.2d 329 (4th Cir.), cert. denied, 350 U.S. 894, 76 S.Ct. 152, 100 L.Ed. 786 (1955).

Appellants also contend that the narcotics should have been suppressed because the New York Supreme Court held insufficient a state search warrant on which it is claimed that the officers relied. The state court barred the use of the seized contraband in a state criminal trial against Beigel.

The theory on which appellants proceed is obscure. Certainly principles of collateral estoppel do not bar the federal government from using this evidence, both because the United States was not a party to the state proceeding and because the contention that the search and seizure were valid as incidents of Beigel's lawful arrest was not litigated in the state court. See Ferina v. United States, 340 F.2d 837, 839–840 (8th Cir.), cert.

---

3. "[O]nce the heroin seized from defendant's person at the threshold of the apartment is held legally seized and admissible as evidence, in practical terms and end result it is of little consequence whether the other heroin and the narcotics paraphernalia is received in evidence." 254 F. Supp. at 931.

denied, 381 U.S. 902, 85 S.Ct. 1446, 14 L. Ed.2d 284 (1965); cf. Laughlin v. United States, 120 U.S.App.D.C. 93, 344 F.2d 187, 189–190 (1965).

■■ There is no substance to appellants' argument that the state suppression order is binding on the federal courts under the decisions in Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed. 2d 653 (1964) and Murphy v. Waterfront Comm'n, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). Those cases involve the availability and scope of the privilege against self-incrimination and are inapposite here. Nothing in those decisions affects the duty of the federal courts to make an independent inquiry concerning the admissibility of evidence in federal cases. See Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L. Ed.2d 1688 (1960); cf. Ker v. State of California, 374 U.S. 23, 30–34, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); Elkins v. United States, 364 U.S. 206, 223–224, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

■ In any event, appellants Lapi and Verzino have no standing to obtain suppression of the evidence seized from Beigel. "In order to qualify as a 'person aggrieved by an unlawful search and seizure' [Fed.R.Crim.P. 41(e)] one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697 (1960); Wong Sun v. United States, 371 U.S. 471, 491–492, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963). Since neither Lapi nor Verzino was "on the 'premises' where the search occurred and their conviction[s] did not flow from the possession by either one of them of the [drugs] at the time of [the] search," they cannot challenge the legality of the search. Diaz-Rosendo v. United States, 357 F.2d 124, 130–134 (9th Cir. 1966) (en banc); United States v. Granello, 365 F.2d 990, 995–996 (2d Cir. 1966); United States v. Bozza, 365 F.2d 206, 222–223

(2d Cir. 1966). Moreover, having failed to make any objection below they may not raise the issue for the first time on appeal. United States v. Herskovitz, 209 F.2d 881, 886 (2d Cir. 1954).

## II.

■ Appellants raise several other claims of error which can be dealt with summarily. Lapi and Verzino challenge the sufficiency of the evidence supporting their convictions. The trial court's finding that Lapi, in furtherance of the conspiracy, drove the Rambler to 58th Street off Sutton Place and later placed in the car a brown paper bag which he knew contained heroin, is amply supported by the evidence and constitutes a sufficient basis for his conviction.

■ Verzino's participation in the conspiracy was also satisfactorily established. There was testimony that he had been seen and overheard in numerous conversations with the other defendants, that during these conversations the sale, delivery, content and price of narcotics were all discussed and that Verzino had handed a package to a John Doe under circumstances suggesting that drugs were involved. Verzino's apparent ability to fix prices for narcotics and to assure their delivery, as the trial court found, is sufficient to establish his constructive possession of the narcotics. See e. g., United States v. Jones, 308 F.2d 26, 30–31 (2d Cir. 1962) (en banc); United States v. Hernandez, 290 F.2d 86, 90 (2d Cir. 1961).

■ Verzino argues that a delay of almost two years between the seizure of the narcotics and his arrest deprived him of due process of law under the Fifth Amendment. His claim that the delay prejudiced his rights finds no support in the record. Such a delay is not grounds for reversal in the absence of a showing that it was "prejudicial or part of a deliberate, purposeful and oppressive design". United States v. Rivera, 346 F.2d 942, 943 (2d Cir. 1965), quoting United States v. Wilson, 342 F.2d 782, 783 (2d Cir.), cert. denied, 382 U.S. 860, 86 S.Ct. 119, 15 L.Ed.2d 98 (1965). Moreover,

Verzino waived this objection by failing to raise it until after all the parties had rested at trial. United States v. Sanchez, 361 F.2d 824, 825 (2d Cir. 1966); D'Ercole v. United States, 361 F.2d 211, 212 (2d Cir. 1966).

Finally, Beigel contends that he was prejudiced by the trial court's ruling permitting Verzino, who testified at the trial, to invoke his Fifth Amendment privilege against self-incrimination while being cross-examined by the government. Beigel did not object when the ruling was made and did not use the opportunity offered him to cross-examine Verzino. He cannot now claim prejudice. United States v. Indiviglio, 352 F.2d 276 (2d Cir. 1965) (en banc), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966).

We have examined appellants' other assignments of error and find them without merit.

The judgments of conviction are affirmed.