UNITED STATES of America,
Appellee,

v.

Noel MAXWELL, William Adams, John Henry Purry, Clarence White and Leonard R. Aiken, Appellants.

No. 461, Docket 31053.

United States Court of Appeals
Second Circuit.

Argued May 31, 1967.

Decided Aug. 8, 1967.

Harry C. Batchelder, Jr., New York City (Anthony F. Marra and James J. Sentner, Jr., New York City, on the brief), for appellants Maxwell, Adams, Purry and White.

James J. Hanrahan, New York City, for appellant Aiken.

Daniel R. Murdock, Asst. U. S. Atty., Southern Dist. of New York (Robert M. Morgenthau, U. S. Atty., Robert C. Morvillo, Michael W. Mitchell and Paul B. Galvani, Asst. U. S. Atty., on the brief), for appellee.

Before WATERMAN, SMITH and KAUFMAN, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Noel Maxwell, John Henry Purry, Clarence White, William Adams and Leonard R. Aiken appeal from judgments of conviction entered in the United States District Court for the Southern District of New York after a jury trial before Judge Charles H. Tenney. All five appellants were convicted of conspiring to violate 21 U.S.C. §§ 173, 174; Maxwell, Purry and White were also found guilty of substantive violations of those sections. Adams was sentenced to five years imprisonment; Maxwell, Purry and White received concurrent sentences of six, seven and eight years, respectively; Aiken was fined $15,000 and sentenced to a term of thirteen years imprisonment to run concurrently with an existing twenty-five year sentence. See, United States v. Aiken, 373 F.2d 294, 296 (2d Cir. 1967). We have examined the joint and several points raised by appellants, find them to be unpersuasive and, therefore, affirm the convictions.

Appellants assert that the evidence of guilt on the conspiracy count was insufficient in that the government did not bear its burden of proving beyond a reasonable doubt (1) that an overall conspiracy existed, (2) that each appellant was a member of the conspiracy, (3) that each knew all of his alleged co-conspirators, and (4) that each was aware that the cocaine had been illegally imported. This point fails in all respects.

Taking the evidence in the light most favorable to the government, as we must, United States v. Fiorillo, 376 F.2d 180 (2d Cir. 1967), the jury could have found that during the years 1956, 1957 and 1958 three seamen, Jesse Colson, Winston Massiah and Mitchell Anfield, purchased large quantities of cocaine from one Rene Hausaff in Valparaiso, Chile. They then transported the cocaine on their ships to New York City where it was carried ashore by longshoremen and subsequently sold to Aiken, to a duo composed of Maxwell and Adams, to a trio formed by Purry, White and one Nick Holiday or to others.

The evidence which inculpated appellants on the conspiracy and substantive counts may be condensed as follows. On June 18, 1956, Colson brought in some cocaine and met a colleague named Granville Smith who took Colson to Purry's apartment where he introduced him to Purry. Purry, in turn, introduced Colson to White and Holiday. The men conversed and White, Purry and Holiday agreed to cut and distribute cocaine to be imported by Colson and Smith. The three agreed further to furnish Colson with money before his ship sailed. Colson landed again on July 31, 1956 and complained to Smith and Purry about not having received the promised funds but later delivered a quantity of cocaine to Smith in Purry's presence. Colson subsequently took back half of the cocaine because of non-payment, sold it to Maxwell for $12,000 but, at Massiah's request and in the presence of Adams, paid back $300 because the weight was short. Thereupon, Maxwell, pleased with Colson's way of doing business, asked to

be notified of the next shipment. In August of 1956, Colson and Anfield met with Purry, White and Holiday; Purry suggested that they not deal with Smith any more because he had defalcated with their funds, Colson agreed and Purry asked to be informed of the next shipment.

Later in August, Purry, White and Holiday agreed to purchase $600 worth of cocaine through Massiah but failed to deliver the cash before Massiah's ship sailed. When Massiah returned in early October, he sold cocaine to Maxwell and Adams. Massiah subsequently stated that he had been robbed and Maxwell, Adams, White and Purry, among others, unsuccessfully attempted to recover the supposedly stolen cocaine. On October 30 Colson and Anfield sailed carrying with them $600 from Purry, White and Holiday. Upon the ship's return on December 10, Colson delivered cocaine to the trio and sold Maxwell and Adams $16,000 to $18,000 worth of cocaine. Early in 1957 and later in June of that year sales of more cocaine to Purry, White and Holiday and to Maxwell and Adams occurred and were financed in the same way with the trio paying in advance and the duo paying on receipt. In July of 1957 Maxwell and Adams made a $2,500 purchase and a similar sale occurred later that summer. At that time Colson gave Purry, White and Holiday cocaine on consignment but when payment was not forthcoming, Colson retrieved the cocaine.

Toward the end of 1957, Colson informed Aiken that he received shipments of cocaine and Aiken told Colson to have one Schoolboy Ellis contact him when a shipment arrived. Colson subsequently sold Aiken $2,500 worth of cocaine. Later on, in the fall of 1958, Aiken purchased a quantity of cocaine for $12,500 and, at the same time, Colson made further sales to Maxwell and Adams.

That same year, Colson made a sale to Aiken at a reduced price because a prior delivery had been defective. Further proof of at least two more sales to Aiken was adduced.

■ As the above-described evidence demonstrates, appellants' attack on the sufficiency of the evidence is unavailing. The jury was clearly entitled to find a single conspiracy with Colson, Massiah and Anfield supplying cocaine from the same source in Chile for sale and distribution by appellants in New York City. Moreover, as detailed above, the government submitted adequate proof of Purry and White's substantive violations on June 18, 1956 and Maxwell's similar offense on July 31, 1956. The government's proof, furthermore, showed numerous sales to each appellant and thus secured each man to the conspiracy. Compare United States v. Stromberg, 268 F.2d 256, 267 (2d Cir.), cert. denied 361 U.S. 863, 80 S.Ct. 119, 4 L.Ed.2d 102 (1959). Thirdly, it is irrelevant that each appellant did not know all of his alleged co-conspirators. United States v. Edwards, 366 F.2d 853, 867 (2d Cir. 1966), cert. denied sub nom. Parness v. United States, 386 U.S. 919, 87 S.Ct. 1358, 18 L.Ed.2d 442 (1967). Lastly, regardless of the evidence of actual knowledge by appellants that the cocaine came from Chile, possession of cocaine coupled with the permissible inference of §§ 173, 174 is adequate evidence of knowing illegal importation. United States v. Tucker, 380 F.2d 206 (2d Cir. June 28, 1967).

Maxwell, Purry, White and Adams contend principally that they were denied their Sixth Amendment right to a speedy trial. Appellants were indicted with seven others[1] on March 3, 1961. The five appellants, along with three of their co-indictees (Massiah, Anfield and Thorn) were forthwith brought to trial on June 13, 1961 before Judge J. Skelly Wright, sitting by designation, and a

---

1. Winston Massiah, Jesse Colson, Mitchell Anfield, Granville Smith, Nick Holiday, Icky Thorn and Sylvia Ferris. Aiken was indicted as "John Doe, a/k/a 'Leon,'" meaning thereby to describe a Negro male, of medium complexion, with black hair and a medium build, approximately 40 years old, approximately 5′ 9″ tall and weighing approximately 165 lbs."

jury. The next day, however, Judge Wright declared a mistrial and on June 15 granted the government's motion to sever Maxwell, Purry, White and Adams. Trial commenced as to Aiken, Massiah, Anfield and Thorn, and on June 29 a jury found all four defendants guilty. We reversed the convictions of Aiken, Anfield and Thorn in United States v. Massiah, 307 F.2d 62 (2d Cir. 1962), and the Supreme Court reversed Massiah's conviction in the noted decision, Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). Almost five years after Judge Wright declared the mistrial, Maxwell, Purry and Adams moved on June 3, 1966 to dismiss the indictment for want of prosecution. Judge William B. Herlands denied their motion on June 20 and appellants were subsequently brought to trial before Judge Tenney and a jury on October 17, 1966.

Maxwell, Purry, White and Adams lack standing to claim that the longer than five year delay between mistrial and retrial deprived them of a speedy trial. Since none of these appellants ever demanded a speedy trial, each has waived this Sixth Amendment right. United States v. Lustman, 258 F.2d 475 (2d Cir.), cert. denied 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958). Even were we to treat the June 3, 1966 motion to dismiss made by Maxwell, Purry and Adams as a demand for a speedy trial, which we do not, it would not avail these appellants, because they were speedily tried thereafter.

Aware that their claims are barred under *Lustman*, appellants invite us to abandon the so-called demand rule which we have consistently applied in a constantly lengthening line of cases.[2] We decline the invitation, however, because the reasoning of *Lustman*, that the demand rule is consonant with the bulk of federal authority and preserves the speedy trial right as a shield for the defendant's protection but not as a sword for his escape, is still to us persuasive.

Maxwell and Aiken next claim that the admission of the government's exhibit 87, which was a typewritten transcript of an incriminating conversation between Maxwell and Colson, violated their rights under the due process clause of the Fifth Amendment. The background of exhibit 87 is as follows. On March 5, 1960, Customs Agent Finbarr Murphy installed a minifon recorder in the glove compartment of Colson's automobile; Colson then picked up Maxwell and recorded a forty-five minute conversation which the two men had. Murphy subsequently removed the recorder, listened to the conversation and stored the recorder in his locker. In March or April of 1960 he made a conventional tape from the more expensive minifon wire. On November 30, 1960, while listening to the re-recording through earphones, Murphy dictated approximately ten minutes of the forty-five minute conversation to a shorthand stenographer whose notes were typed. Murphy then compared the transcript with the re-recording and was satisfied that

2. Chapman v. United States (2d Cir. April 21, 1967), 376 F.2d 705; United States v. Moore, 373 F.2d 547 (2d Cir. 1967); United States v. Beigel, 370 F.2d 751 (2d Cir. 1967); United States v. Aadal, 368 F.2d 962 (2d Cir. 1966), cert. denied 386 U.S. 970, 87 S.Ct. 1161, 18 L.Ed.2d 130 (1967); United States v. Smalls, 363 F.2d 417 (2d Cir. 1966), cert. denied 385 U.S. 1027, 87 S.Ct. 755, 17 L.Ed.2d 675 (1967); D'Ercole v. United States, 361 F.2d 211 (2d Cir.), cert. denied, 385 U.S. 995, 87 S.Ct. 610, 17 L.Ed.2d 454 (1966); United States v. Sanchez, 361 F.2d 824 (2d Cir. 1966); United States v. Lopez, 355 F.2d 250 (2d Cir.), cert. denied 384 U.S. 1013, 86 S.Ct. 1979, 16 L.Ed.2d 1031 (1966); United States v. Kelly, 349 F.2d 720, 768 (2d Cir. 1965), cert. denied 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966); United States v. Haller, 333 F.2d 827 (2d Cir.), cert. denied 379 U.S. 921, 85 S.Ct. 276, 13 L.Ed.2d 334 (1964); United States v. Wai Lau, 329 F.2d 310 (2d Cir.), cert. denied 379 U.S. 856, 85 S.Ct. 108, 13 L.Ed.2d 59 (1964); United States v. Lester, 328 F.2d 971 (2d Cir. 1964); United States v. Kaufman, 311 F.2d 695 (2d Cir. 1961), cert. denied 369 U.S. 803 (1962); United States v. Van Allen, 288 F.2d 825 (2d Cir.), cert. denied 368 U.S. 836, 82 S.Ct. 31, 7 L.Ed.2d 37 (1961).

the transcription was accurate. The portions deleted were either irrelevant, inaudible or repetitive. In July 1961, under the impression that there would not be a re-trial, Murphy put the minifon wire and the re-recording back into circulation where, in the normal course of affairs, the conversations were erased when the wire and tape were re-used.

■■ At the voir dire, Maxwell objected to the admission of the transcript because the recording was made in violation of his right to counsel. He does not press this point on appeal. In any event, it is meritless. See, United States ex rel. Molinas v. Mancusi, 370 F.2d 601 (2d Cir.), cert. denied 386 U.S. 984, 87 S.Ct. 1285, 18 L.Ed.2d 232 (1967), and cases cited therein. What Maxwell does argue is that the accuracy of the transcript cannot be ascertained and that whether the transcript honestly reflects the tenor of the whole conversation cannot be determined. The deletion of the inaudible, irrelevant and repetitive portions of a tape, however, does not render it inadmissible. United States v. Knohl, 379 F.2d 427 (2d Cir. June 22, 1967) at 2602.

■ The accuracy of the transcript presents a best evidence question. We recently said in *Knohl*, "as far as the best evidence rule is concerned, a well recognized exception is that secondary evidence may be admitted in lieu of the original provided the original has not been lost, destroyed or become unavailable through the fault of the proponent and provided the copy does not otherwise appear to be untrustworthy." Here, although the transcript was typed from shorthand notes dictated by Murphy while listening to the re-recording and was thus susceptible to many inaccuracies, Murphy testified that the transcript accurately represented the re-recording which itself is not challenged. Hence, Judge Tenney was warranted in finding that untrustworthiness had not been shown and the question remains of whether "the original has * * * been lost, destroyed or become unavailable through the fault of the proponent." The tapes were erased by the government; nevertheless, secondary evidence is admissible unless the loss, destruction or unavailability was purposefully caused by the proponent in order to prevent the production of the primary evidence.[3] Here,

---

3. Courts, commentators and codifiers have expressed this rubric in various ways. E.g., Sylvania Elec. Prods. Inc. v. Flanagan, 352 F.2d 1005, 1008 (1st Cir. 1965); United States v. Alexander, 326 F.2d 736, 739 (4th Cir. 1964); McCormick, Evidence § 196 (1954) (serious fault of the proponent); Tallo v. United States, 344 F.2d 467, 470 (1st Cir. 1965) (wrongful disposition); Chandler v. United States, 318 F.2d 356 (10th Cir. 1963) (fraudulent purpose involved in the destruction); Toho Busson Kaisha, Ltd. v. American President Lines, 265 F.2d 418, 423, 76 A.L.R.2d 1344 (2d Cir. 1959) (connivance of the proponent); United States v. O'Connor, 237 F.2d 466, 475 (2d Cir. 1956) (destroyed * * * with fraudulent design); Watson v. United States, 224 F.2d 910, 912 (5th Cir. 1955) (without any fraudulent purpose or any intent to create an excuse for its nonproduction); Reynolds v. Denver & Rio Grande Western R.R., 174 F.2d 673, 675 (10th Cir. 1949) (fraud or bad faith with regard to the destruction); Sellmayer Packing Co. v. Commissioner of Internal Revenue, 146 F.2d 707, 710 (4th Cir. 1944) (no reasonable probability that it has been designedly withheld or suppressed); McCormick, Evidence § 201 (1954) at 414 (if the original document has been destroyed by the person who offers evidence of its contents, the evidence is not admissible unless such person, by showing that such destruction was accidental or was done in good faith, without intention to prevent its use as evidence, rebuts to the satisfaction of the trial judge, any inference of fraud); 4 Wigmore, Evidence § 1198 at 356 (1940) (proponent first removes * * * any reasonable suspicion of fraud); Model Code of Evidence, Rule 602 (culpable negligence or wrongdoing of the proponent). Regardless of the particular formulation, it is agreed that secondary evidence is admissible even though the proponent is responsible for the unavailability of the primary evidence except where the unavailability is caused by the proponent's purposeful design to prevent production of the primary evidence.

Murphy stated that he returned the tapes to circulation where they were erased because he did not think that a re-trial would occur in which they would be used. Therefore, they were not erased to prevent their production for trial and they are admissible. Thus, although we regret the government's conduct in not supervising their handling more carefully and allowing the tapes to be erased while charges against Maxwell were outstanding, it was within Judge Tenney's discretion to admit exhibit 87.

██ ██ Even if the admission of the exhibit were erroneous, which it is not, Maxwell would not be entitled to relief for two reasons upon which we need not rely. First, he received a concurrent sentence for the conspiracy count on which the tapes were admitted. See Lawn v. United States, 355 U.S. 339, 359, 362, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); United States v. Costello, 381 F.2d 698 (2d Cir. 1967); United States v. Gonzalez, 379 F.2d 284 (2d Cir. June 22, 1967) (mandatory minimum sentences). See also, United States v. Youngblood, 379 F.2d 365 (2d Cir. June 21, 1967). Secondly, Colson testified at trial as to the substance of the taped conversation. See, Monroe v. United States, 98 U.S.App.D.C. 228, 234 F.2d 49, 55, cert. denied 352 U.S. 873, 77 S.Ct. 94, 1 L.Ed.2d 76 (1956). Cf. United States v. White, 223 F.2d 674 (2d Cir. 1955). Finally, the transcript did not refer to Aiken and was admitted only against Maxwell; hence, Aiken's claim is frivolous.

██ Aiken further argues that certain in-custody statements which he made to Agent Murphy after he had been arrested and informed of his rights were admitted in violation of the rules laid down in Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) and Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). At trial, Agent Murphy gave the following account of the conversation, which Aiken does not challenge:

I pulled up in front of the House of Detention and I told Aiken to get out, and he said wait a minute, and I said "What do you want?"

He said, "If you get any stuff you want to get rid of, call me."

I said, "What?"

He said, "If you get any stuff you want to get rid of, call me, you can trust me."

I said to Aiken, "Trust you? I never seen you before last night."

And he repeated, "You can trust me."

So I said, "Do you have any references?"

He says, "I have no references. I don't do business that way. Either you do it with me or you don't."

At that point I told him to get out and the conversation was terminated.

Since Agent Murphy's unchallenged testimony reveals that Aiken freely volunteered the remarks, neither *Massiah* nor *Escobedo* has been violated. United States v. Accardi, 342 U.S. 697, 701 (2d Cir.), cert. denied 382 U.S. 954, 86 S.Ct. 426, 15 L.Ed.2d 359 (1965). Cf. United States v. Garcia, 377 F.2d 321 (2d Cir. May 22, 1967).

██ Aiken complains that he was denied trial by an impartial jury because a juror communicated to the court some denigrating matter about one of appellant's trial lawyers. After determining in the absence of appellant and counsel that the juror had not discussed the matter with the rest of the panel, Judge Tenney excused the juror and replaced him with an alternate. In following this procedure and in replacing the juror with an alternate, Judge Tenney acted well within his powers and, absent a showing by appellant, we will not presume prejudice in such matters. United States v. Ellenbogen, 365 F.2d 982, 989 (2d Cir. 1966), cert. denied 386 U.S. 923, 87 S.Ct. 892, 17 L.Ed.2d 795 (1967); United States v. Houlihan, 332 F.2d 8, 13 (2d Cir.), cert. denied 379 U.S. 828, 85 S.Ct. 56, 13 L.Ed.2d 37 (1964); United States v. Woodner, 317 F.2d 649, 652 (2d Cir. 1963).

 Aiken goes on to make two complaints about Judge Tenney's charge. These points are improperly presented for appellate review because Aiken failed to assert a timely exception below, United States v. Indiviglio, 352 F.2d 276 (2d Cir. 1965), cert. denied 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966), and, anyway, are trivial. Aiken complains that "The Court in its charge did not spell out for the Jury that were the Jury to find that there were separate independent conspiracies with separate and distinct groups involved and that some of the defendants belonged to one conspiracy and not to the other and that other defendants belong to another conspiracy, then a verdict of not guilty must be returned to all the defendants in the conspiracy count." In fact, the Court correctly charged that "Proof of several separate and independent conspiracies involving various of the defendants, although to violate the same narcotic laws, is not proof of the single conspiracy charged in the indictment." United States v. Aiken, supra. Aiken's second point is that the charge did not adequately explain the permissive inference of §§ 173 and 174. Although the court might have stated more specifically that the inference is only permissive, failure to do so is not plain error noticeable under Fed. R.Crim.P. 52(b), especially when knowing importation is not in issue. United States v. Morton, 376 F.2d 606 (2d Cir. May 8, 1967).

 Aiken's next-to-last point is that in identifying a photograph of Aiken, Agent Murphy read off an inscription on the rear which referred to Aiken as a federal fugitive. Although this reference was unfortunate, it is unimaginable that, in light of the overwhelming evidence of guilt, it could have in any way prejudiced Aiken. Cf. United States v. Gillette, 383 F.2d 843 (2d Cir.) (fingerprint cards). In any event, Aiken did not request the court to admonish the jury to disregard the remark.

The final point made by Aiken, which concerns alleged prosecutorial misconduct in regard to the Assistant United States Attorney's opening and closing remarks, is likewise without merit. The prosecutor's prediction in his opening statement that the government would show shootings, cheatings and robberies was substantiated at trial, cf. United States v. Moran, 194 F.2d 623 (2d Cir.), cert. denied 343 U.S. 965, 72 S.Ct. 1058, 96 L.Ed. 1362 (1952), and his summation coolly detailed the evidence and cannot even be described as demonstrating "lack of the restraint which more competent prosecutors are careful to display." United States v. Murphy, 374 F. 2d 651, 653 (2d Cir. 1967). Compare, United States v. Bugros, 304 F.2d 177 (2d Cir. 1962).

Aiken makes other arguments but they are too frivolous to warrant discussion.

Judgment affirmed.