**UNITED STATES of America,
Plaintiff,**

v.

**John P. McCARTHY, a/k/a, Jack
McCarthy, Defendant.**

**No. 67 Cr. 217.**

United States District Court
S. D. New York.

June 4, 1969.

Robert M. Morgenthau, U. S. Atty. for Southern District of New York, for United States of America; Elkan Abramowitz, Asst. U. S. Atty., of counsel.

Irving Anolik, Carl J. Rubino, New York City, for defendant.

### OPINION

FRANKEL, District Judge.

Defendant John P. McCarthy has been found guilty by a jury of failing to disclose in a required report to the Secretary of Labor payments he received from a corporate "labor relations consultant" at a time when he was an officer or employee of a labor organization. The charge leading to this conviction was laid under Sections 202(a) and 209(b) of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 432 (a) and 439(b).[1]

Two problems must now be resolved in order to determine whether the verdict may stand. First, pressing a subject partially explored before trial but left for completion (in case of need) until now, defendant has renewed and expanded in a further evidentiary hearing the charge that evidence obtained by unlawful wiretaps or bugs—evidence which should have been, and should now be, suppressed—was used against him, vitiating the conviction. Second, moving in arrest of judgment or for a new trial, McCarthy makes a cluster of arguments which variously (a) renew attacks, heretofore rejected, upon the validity of Count 38 and its statutory foundation, (b) assert that the reporting requirements in question, properly construed, did not require disclosure of the unreported payments underlying the conviction, and (c) assail the charge to the jury for omission of the statutory provision, 29 U.S.C. § 186 (c), listing the exceptions from the reporting requirements.

The various arguments thus tendered, not always clearly or with perfect consistency, have been studied with care. None can justify nullification of the jury's verdict.

### I.

The motion to suppress evidence assertedly gotten as a result of unlawful eavesdropping has been the subject of evidentiary hearings preceding the trial and resumed after the jury's verdict. It was shown that two men who did business with McCarthy (Basis and Kapilow) had had their telephones tapped by state investigators for two or three months around the autumn of 1961, and that conversations including or relating to McCarthy had been overheard in this way. It was also shown that McCarthy's office had been bugged (at his desk or in its vicinity) by the Federal Bureau of Investigation during the period from April 12, 1962, to October 14, 1962. Questions of standing were resolved in McCarthy's favor. The F.B.I. "logs" of conversations in McCarthy's office were delivered to him for inspection by the court's

1. The single count given to the jury and resulting in the verdict now considered was the last in what had started out as a 38-count indictment against McCarthy and a codefendant. Counts 36 and 37 were dismissed before trial, 298 F.Supp. 561, on the authority of Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), and companion cases. Both defendants were acquitted by the court on the first 35 counts upon a ruling that there was not sufficient evidence to go to the jury. Count 38 named McCarthy as the sole defendant.

order.[2] Cf. Mancusi v. DiForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968). The subject was explored, I believe, in more than ample detail.[3]

◼ The upshot is that McCarthy has failed to show any "taint" of the kind that might be thought helpful to him now. As a threshold matter (probably enough in itself to reveal the insubstantiality of the eavesdropping claim), it may be observed that McCarthy's papers are notably vague and sweeping in their purported answer to the court's question as to exactly what evidence is asserted to have been suppressible. When a measure of specificity is finally reached, it becomes slightly absurd; defendant's post-trial memorandum on this subject concludes (p. 24) with this sentence:

> "The motion to suppress should be granted, the *LM–30 report should be suppressed* and the indictment dismissed." (Emphasis added.)

The "LM–30 report" is the document voluntarily delivered by McCarthy to the Secretary of Labor, and it is for *omissions* from this document that he stands convicted. There is no explanation (unless it be the apparent, and untenable, premise that a man subjected to unlawful eavesdropping acquires from this an immunity from prosecution) why such a document may or should be suppressed. But that, as has been mentioned, is about as close as defendant comes to specifying what things ought properly to be suppressed.

The reason for this basic flaw is obvious from the record. The facts upon which McCarthy has been prosecuted and convicted were widely known, easily ob-

tainable, and voluntarily conceded by him both in his discussions with Labor Department officials and upon the trial of this case. Rightly or wrongly, the record shows, McCarthy was for a long time suspected of corrupt and conflicted activities on both sides of the labor-management relationship. As matters stood in the last analysis, the single area of dispute in the present case was whether his failure to report the payments in issue could be justified by good-faith reliance upon the advice of counsel. There was no need to ferret out the kinds of secrets obtainable by illegal eavesdropping.

And so, having seen the F.B.I. logs and having refrained from seeking the state materials, defendant is not able even to suggest with any plausible specificity what it is he wants suppressed. Having looked at the logs, I can understand this inability. But that is far less important than the fact that defendant himself has been shown to lack any target for his suppression theory.

◼ Beyond that, however, the record refutes the argument in its entirety. It is undisputed that McCarthy was the subject of illegal *state* wiretapping. I find, however, with no trace of doubt, that none of the information thus obtained, and none of the fruits thereof, ever came into the hands of the federal officers who conducted the investigation and prosecution of the instant case.[4] Similarly, having ruled in defendant's favor on preliminary issues of standing, and having found as a result that he met the initial burden of showing that the F.B.I. bug comprised an illegal intrusion of which he could complain, I am per-

---

2. It was undisputed that McCarthy resigned his union office on July 19, 1962, and no longer had official possession or an official place in the bugged office. Accordingly, except for bugged conversations at later times in which he participated, he was given the logs only until the time of his resignation.

3. It was shown that tapes of such overheard conversations are routinely erased within two weeks or so after logs are

made from them. This was done to the tapes here involved. There is no suggestion of ulterior purpose or any impropriety of any kind in this aspect of the record. Cf. United States v. Maxwell, 383 F.2d 437, 442 (2d Cir. 1967), cert. denied, 389 U.S. 1057, 88 S.Ct. 809, 19 L.Ed.2d 856 (1968).

4. Insofar as issues of credibility attend this subject, they have been resolved in the Government's favor.

suaded beyond a reasonable doubt [5] that no evidence here involved " 'has been come at by exploitation of that illegality' * * *." Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963), quoting Maguire, Evidence of Guilt 221 (1959). It is again pertinent, of course, that defendant is unable to identify what evidence he claims to be suppressible. But apart from that, the record shows that the Labor Department investigation which "made" the present case was wholly independent of the F.B.I. eavesdropping; that the products of such eavesdropping were never given to the Labor investigators; and that fairly standard sources—mainly bank records, routine union reports, tax returns and volunteered information—were enough to account for the evidence upon which the conviction rests.

## II.

A subject of lengthy study and discussion for counsel and the court was the question of whether, and to what extent, it might be a defense that McCarthy had relied upon the advice of counsel in the omissions from his report (payments from National Consultants Associated, Ltd.) which became the cause of his indictment and conviction. Over the strenuous, and not insubstantial, objections of the prosecution, the court concluded that such reliance—if generated and acted upon in good faith—would be a defense. Since the subject is no longer disputed, it is enough to recall that the conclusion turned upon the point that 29 U.S.C. § 439(b), in relevant part, punishes one who "knowingly fails to disclose a *material* fact;" that the notion of "materiality" is a legal one, not without subtlety in this context; and that one could not "knowingly" accomplish a criminal omission in this setting unless he knew what was material.

Having decided that much, the court further opined that the jury would have to be apprised that the legal advice had been erroneous. In this way, it was thought, the focus would properly center upon the jury's true concern—namely, the factual existence *vel non* of the good-faith reliance—and not upon legal issues as to the validity of the advice. Had the advice been deemed correct as matter of law, the prosecution would have fallen. It seemed appropriate and necessary, therefore, to make clear to the jury that this question had been resolved by the court and was not to be confused with the different issue of reliance which was the heart of the defense.

The foregoing thoughts were canvassed with counsel before trial. Defense counsel did not object, then or later, to the charge that the advice had been wrong—when this was coupled, of course, with the vital thought that reliance upon that advice in good faith would preclude conviction. On the contrary, defendant's counsel acknowledged that the jury "must be told" the court's views on this subject.

The defense contended, however, and now renews the contention, that the jury should have been given the language of 29 U.S.C. § 186(c) (1), which states *exceptions* to the reporting requirements McCarthy was accused of violating. This argument was rejected, and is now rejected again. The only conceivable point of giving the exceptions would have been an invitation to the jury to consider the correctness of the advice of defendant's counsel. As the thought is now stated in counsel's affidavit supporting the motion in arrest or for a new trial, the statutory language showing what was excepted "is not so equivocal as to lend itself to the categorical determination that the interpretation of [counsel upon whose advice McCarthy assertedly relied] was 'wrong.'" However that may be, the overall theory of the charge was not that McCarthy's lawyer, or the legal validity of his advice, was on trial, but that McCarthy should

---

5. Because the Government has undertaken and carried the burden of proof beyond a reasonable doubt, United States v. Schipani, 289 F.Supp. 43, 54–64 (E.D.

N.Y.1968), aff'd 412 F.2d 1262 (2d Cir. 1969), this court has not deemed it necessary to decide whether a lesser degree of proof might suffice.

be acquitted unless he was proved "knowingly" to have omitted a "material" fact. And it was only for this central purpose that the jury was to consider whether McCarthy had *in fact* relied upon the advice, sound or unsound.

Moving from the charge to the jury, defendant renews his consistent legal position that he should be acquitted as a matter of law because the payments from National Consultants Associated were not among those required to be reported. In this different and entirely proper respect, attention must be paid again to 29 U.S.C. § 186(c) (1).

■■ Although this excepting provision has been part of the defense from the beginning, the argument has not been always consistent or uniformly substantial. Thus, at this stage, main reliance is placed upon the language which excepts from the reporting requirements any "money * * * payable by an employer to any of his employees whose established duties include acting openly for such employer in matters of labor relations * * *." [6] But this, unlike most of counsel's other submissions, seems frivolous. Whatever may be open to question in the case, it has never been suggested in fact that McCarthy ever acted for National Consultants Associated (the source of the payments) "in matters of labor relations" within the pertinent meaning of the quoted phrase. It is plain from the context that the statutory reference is to the "labor relations" between the payor-employer and the employees (or representatives of employees) *of that employer*. It is equally plain that National Consultants had no such "labor relations"—or, at least, that efforts concerning such matters were not the basis for the payments McCarthy received.

■ Considerably more debatable is defendant's reliance upon the exception in § 186(c) (1) for "any money * * * payable by an employer * * * to any officer or employee of a labor organization, who is also an employee * * *

of such employer, as compensation for * * * his service as an employee of such employer * * *." Concededly, the argument runs, McCarthy was an "officer or employee" of Local 1430, I.B.E.W. Concededly, too, National Consultants Associated was a "labor relations consultant to an employer" which paid him money, and such payments are reportable under 29 U.S.C. § 432(a) (6). But, he contends, that section excepts all "payments of the kinds referred to in section 186(c); " the latter, in the language quoted in the first sentence of this paragraph, excepts payments by "an employer * * * to * * * an employee; " and National Consultants was defendant's "employer."

The flaw in the argument is the premise that National Consultants may be viewed as an "employer" under § 186(c) even though it is in the separate and distinct category of "labor relations consultant" (not mentioned in § 186(c)) for all relevant purposes of the statutory scheme. This premise does not survive closer inspection of the statute and its recent history.

As this court has had an earlier occasion to observe concerning the present indictment, United States v. McCarthy, 298 F.Supp. 561, 564 (1969), the prohibitions (as well as the exceptions) in § 186 were considerably expanded and particularized in the Labor Management Reporting and Disclosure Act of 1959. The draftsmen of the 1959 amendments paid special attention to the class of "labor relations consultants," whose potentially corrupt activities were a matter of extensive study in the antecedent hearings and discussions. In the revised version of § 186, the categories of forbidden payments were expanded to cover not only those by "any employer," but (among other additions) by "any person who acts as a labor relations * * * consultant to an employer * * *." To implement the new concern with consultants, such persons were separately designated and specifically treated both in § 186 and in

---

6. Affidavit of Irving Anolik, sworn April 21, 1969, p. 2.

the various other provisions touching their activities. See, in addition, 29 U.S. C. §§ 401, 402(m), 432(a) (6), 433(a) (4). Cf. 29 U.S.C. § 433(b). When amendments were made to subsection (c) of § 186, the excepting provision upon which defendant relies, comparably careful and specific changes were made to reflect, where such reflection was desired, the broadened categories of prohibitions. But no exception was made for payments by any "labor relations * * * consultant."

This left it clear as a matter of text no less than simple good sense that a labor union official like McCarthy was to report under § 432(a) (6) any payments received by him from "any person who acts as a labor relations consultant to an employer * * *." No part of the exceptions in § 186(c) reached such labor relations consultants or payments made by them. With the categories of "labor relations consultant" and "employer" distinctly defined and juxtaposed, the statutory plan forecloses the thought that one may be conveniently merged into the other. If defendant's contrary thesis were sound law, any union officer would be free to avoid the reporting requirement by the simple expedient (used by McCarthy) of creating a corporate "labor relations consultant" and taking payments from it for "his service as an employee * * *." Then, if defendant is correct, all sorts of payments from employers, unquestionably meant to be reported under § 432(a) (6), could remain unreported because they were funneled through the "consultant" as the union officer's "employer." Furthermore, most or all of the payments forbidden by §

186(a) and (b) could be made lawful by use of the same gimmick assertedly supplied in subsection (c). In short, on defendant's theory the category of "consultants," separately identified and added to broaden the system of interrelated proscriptions and reports, would become a simple and ready device for stultification of the regulatory objectives. No union officer, reading the statute with a modicum of good faith, could have imagined that such a result was intended. There is no basis for accepting a construction so absurd and self-defeating.

Defendant's post-trial motions are in all respects denied.[7] Sentence will be imposed upon the jury's verdict.

---

7. Other arguments advanced or reiterated in the motion in arrest or for a new trial have been noticed and rejected. The claim of denial of a speedy trial was decided against defendant by Judge Cannella before trial with leave to renew "if during the course of trial evidence is presented to warrant a granting of the motion." There has been no showing of grounds for a different result. It is also argued that 29 U.S.C. § 504, forbidding persons convicted of violations like that in question from working as labor rela-

tions consultants for five years after conviction, is (1) a Bill of Attainder and (2) a cruel and unusual punishment. The argument may be premature. Cf. Postma v. International Brotherhood of Teamsters, Etc., 337 F.2d 609 (2d Cir. 1964). It is, in any event, not weighty. Cf. United States v. Brown, 381 U.S. 437, 453–456, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965); Fitzgerald v. Catherwood, 388 F.2d 400, 407 (2d Cir.), cert. denied, 391 U.S. 934, 88 S.Ct. 1846, 20 L.Ed.2d 854 (1968).