BANK BRUSSELS LAMBERT,
et al., Plaintiffs,

v.

CREDIT LYONNAIS (SUISSE)
S.A., et al., Defendants.

The Chase Manhattan Bank,
N.A., Plaintiff,

v.

Credit Lyonnais (Suisse)
S.A., Defendant.

Nos. 93 Civ. 6876(LMM),
94 Civ. 2713(LMM).

United States District Court,
S.D. New York.

April 10, 2001.

### MEMORANDUM AND ORDER
McKENNA, District Judge.

**1.**

Defendant Credit Lyonnais (Suisse) S.A. ("Credit Lyonnais") moves for an order "barring any party from introducing as evidence at trial (i) any portion of an 18–page excerpt from an 'edited, non-verbatim non-final' draft transcript of an interview conducted by Rogers & Wells of Kikka Harrison on January 18–20, 1994 (the 'Disputed Excerpt') or (ii) any testimony of Ms. Harrison concerning the Disputed Excerpt." (Notice of Motion at 1–2.) [1] The motion is granted in part and denied in part, as follows.[2]

**2.**

■ Ms. Harrison's statements during the Rogers & Wells interview are, by definition, not hearsay if offered by a plaintiff, since they are either "statement[s] by a person authorized by the party to make a statement concerning the subject," Fed.R.Evid. 801(d)(2)(C), or "statement[s] by the party's [*i.e.*, Credit Lyonnais'] agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." *Id.* 801(d)(2)(D). Ms. Harrison's statements might, obviously, be proved by the testimony of persons who heard her make the statements.

**3.**

Plaintiffs, however, seek to prove Ms. Harrison's statements through the introduction of the Disputed Excerpt. Most of the briefing on this motion is devoted to the question whether the Disputed Excerpt can be authenticated as representing the statements of Ms. Harrison.

---

**1.** A copy of the Disputed Excerpt is annexed as Exhibit A to the supporting affidavit of Ms. Harrison. The Court counts 19 pages in that exhibit. The background to and circumstances of the interview are discussed in the declaration of Donald F. Luke of Rogers & Wells dated April 8, 1998, the moving affidavit of Ms. Harrison, and the depositions of Ms. Harrison (May 1, 2000) and Mr. Luke (August 8, 2000).

**2.** Throughout the discussion that follows, the Court assumes the relevance of what Ms. Harrison said during the portion of Rogers & Wells interview reflected in the Disputed Excerpt, and that what Ms. Harrison said is offered to prove the truth of the matters asserted by her.

The nature of the Disputed Excerpt must be considered. On the days in question two Rogers & Wells lawyers—Donald F. Luke and Kenneth L. Miller—interviewed Ms. Harrison in Geneva and tape recorded the interview.[3] Upon their return to the United States members of the Rogers & Wells secretarial staff transcribed the tapes made in Geneva. According to Mr. Luke, "Mr. Miller then reviewed, corrected, and edited the draft transcripts." (Luke Decl. ¶ 9.) The resulting document is described as follows in a privilege log served by Rogers & Wells: "Edited, non-verbatim transcript of tape-recorded interview of K. Harrison between 1–18–94 and 1–20–94, with documents organized by counsel attached to some copies (22344–67 and 11951–56 are excerpts)." (Harrison Aff. Ex. C at 51.) The Disputed Excerpt is a portion of the document so described. The tapes have been destroyed, and, as far as the Court has been informed, the Roger & Wells secretarial staff transcriptions are no longer available.

Ms. Harrison was not asked by Rogers & Wells to correct, at any stage of its preparation, the document from which the Disputed Excerpt is taken, and she states that "[i]t is impossible at this point in time to reconstruct what actually was said. It is clear to me that the Disputed Excerpt contains numerous errors and statements that can easily be taken out of context." (Harrison Aff. ¶ 13.)[4]

Mr. Luke was deposed with respect to the Disputed Excerpt. (*See* LaSala Decl. Ex. B [Transcript of Luke deposition, Aug. 8, 2000].) He testified to, among other things, Mr. Miller's editing. He testified that

Mr. Miller had a written draft transcript, sort of first draft if you will, first rough copy in hard copy. He would look at that, listen to the tapes and try to fill in portions where there were—where it was inaudible to the operator, the person in the typing pool or where there were words that were heard by the typist incorrect.

(*Id.* at 40.) He also testified that

there were times when my asking Miss Harrison a question would get off to a rough start and we would go back and finally get the question right the way I wanted to articulate it and some of that lead in would be deleted because what we wanted was a transcript that was accurate and easily read for our notetaking purposes and that, I guess, would be included in the reviewing, correcting and editing.

(*Id.* at 41.) Corrections were made in instances where the English was not exactly correct. (*Id.* at 90–91.)

Mr. Luke was questioned as to particular portions of the Disputed Excerpt. As to a number of those portions his recollection did not extend to the specific words of the questions and answers. (*See id* . at 55, 60, 61–62, 63, 87.) Overall, Mr. Luke characterized the Disputed Excerpt as "not verbatim, but it is 100 percent accurate. . . . The essence of it, the gist of it, the flow of it, the relation of this subject was discussed before that subject, that's all absolutely as it happened." (*Id.* at 88–89.)

In light of the editing process as described by Mr. Luke and the instances in which he was unable to state that the Disputed Excerpt accurately reflected

---

**3.** During a part of the interview Jacques Cottier and Donatella Amaducci, counsel to Credit Lyonnais, and Jean–Phillipe Babel, of Credit Lyonnais, were present.

**4.** Ms. Harrison identifies inaccuracies in *id.* ¶ 15 (citing the transcript of her May 1, 2000 deposition).

what was said, the Disputed Excerpt cannot be regarded as a transcript of that portion of the Rogers & Wells interview of Ms. Harrison that is reflected in the Disputed Excerpt. The situation is thus different from that in *United States v. Maxwell*, 383 F.2d 437, 441–43 (2d Cir.1967), where there was testimony that a transcript "accurately represented" a recording. 383 F.2d at 442.[5]

### 4.

■ The Second Circuit has held that "a 'third party's characterization' of a witness's statement does not constitute a prior statement of that witness unless the witness has subscribed to that characterization." *United States v. Almonte*, 956 F.2d 27, 29 (2d Cir.1992) (*per curiam*) (quoting *United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir.), *cert. denied*, 447 U.S. 928, 100 S.Ct. 3027, 65 L.Ed.2d 1123 (1980)). *See also United States v. Schoenborn*, 4 F.3d 1424, 1427 (7th Cir.1993).

In both *Almonte* and *Leonardi*, the prior statement of the witness was sought to be introduced as a prior inconsistent statement to impeach the witness. *Almonte*, 956 F.2d at 29; *Leonardi*, 623 F.2d at 756. In *Schoenborn*, the prior statement of the witness was sought to be introduced under Fed.R.Evid. 803(5) (recorded recollection). 4 F.3d at 1427.

Plaintiffs argue that *Leonardi* (and, by implication, *Almonte*) are not relevant because *Leonardi* "concerned the use of prior *inconsistent* statements under Fed. R.Evid. 801(d)(1)(A), which does require the former statement to have been made under oath." (Bank Brussels Lambert ("Bank Brussels"), *et al.*, Mem. at 22 n. 26.) However, in neither *Almonte* nor *Leonardi* was the evidence offered a "statement ... given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition." Fed.R.Evid. 801(d)(1)(A). In *Almonte*, the document in question consisted of notes by an Assistant United States Attorney of a debriefing of a Drug Enforcement Administration agent, *see* 956 F.2d at 28–29, and in *Leonardi* the evidence offered was a memorandum of an interview prepared by a Federal Bureau of Investigation ("FBI") agent. *See* 623 F.2d at 756. In *Schoenborn*, also, the evidence in question was a report by an FBI agent. *See* 4 F.3d at 1426.

■ What is significant here, in the first place, is the discussion in *Almonte*, based on Fed.R.Evid. 901(a) and 104(b), of the requirements for admission of the document at issue in that case. The court said, first, that "[t]he burden of proving that notes reflect the witness's own words rather than the note-taker's characterization falls on the party seeking to introduce the notes." 956 F.2d at 29 (citing Fed.R.Evid. 901(a), 104(b)). Then the court, after quoting *id.* 104(b), went on to say that "a judge may disallow the introduction of conditionally relevant evidence unless its proponent presents evidence sufficient to support a finding that the condition—for our purposes, the identification of a third party's notes as a verbatim transcript of a witness's prior statement—is fulfilled." *Almonte*, 956 F.2d at 30.

■ In the present case, plaintiffs have not sustained the burden of presenting

---

**5.** In *Maxwell*, a government agent made a copy of the original recording and later, "while listening to the re-recording through earphones, ... dictated approximately ten minutes of the forty-five minute conversation to a shorthand stenographer whose notes were typed [and] then compared the transcript with the re-recording and was satisfied that the transcription was accurate. The portions deleted were either irrelevant, inaudible or repetitive." *Id.* at 441–42.

evidence sufficient to support a finding that the Disputed Excerpt is a verbatim transcript of Ms. Harrison's statements. Mr. Luke's testimony makes that clear. The Disputed Excerpt has not been authenticated as representing the statements of Ms. Harrison, and cannot be admitted on that ground.

### 5.

■ Plaintiffs also argue that the Disputed Excerpt should be admitted as "other evidence of the contents of a . . . recording . . . [a]ll originals [of which] have been destroyed." Fed.R.Evid. 1004(1).[6] This argument, however, adds nothing to plaintiffs' position because, for reasons already discussed, the Disputed Excerpt no more demonstrates what is said by Ms. Harrison on the lost tape than it demonstrates what Ms. Harrison said at the interview. Cases like *United States v. Gerhart*, 538 F.2d 807 (8th Cir.1976) (*see* Bank Brussels, *et al.* Mem. at 14), do not suggest a contrary view. In *Gerhart*, the issue was the admissibility of a photocopy of a photocopy of a check over a best evidence objection, and the court noted that "the Government was merely required to demonstrate preliminarily, to the satisfaction of the court, that the original photocopy was lost, that the proffered photocopy was what it purported to be and that it accurately represented the contents of the original photocopy." 538 F.2d at 809–10. Here, plaintiffs have not shown that the Disputed Excerpt is a transcript of Ms. Harrison's statements nor that it accurately represents the contents of the transcript as far as what Ms. Harrison said.

### 6.

Plaintiffs also argue that the Disputed Excerpt is a non-hearsay vicarious admission as "a statement by [a Rogers & Wells lawyer as] the party's [*i.e.,* Credit Lyonnais'] agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." *Id.* 801(d)(2)(D).

■ It is, of course, true, that "[s]tatements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney." *United States v. Margiotta*, 662 F.2d 131, 142 (2d Cir.1981), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983) (citing Fed.R.Evid. 801(d)). Here, however, plaintiffs are not seeking to introduce the statements of the Rogers & Wells attorneys. The attorneys' statements during the portion of the interview reflected in the Disputed Excerpt are "not offered 'to prove the truth of the matter asserted.' Fed.R.Evid. 801(c). Rather, they are offered to make Harrison's statements intelligible to the jury and recognizable as admissions." (Chase Manhattan Bank, N.A. ("Chase") Mem. at 7 n. 5.) Plaintiffs seek to introduce what the Disputed Excerpt says Ms. Harrison said. Those portions of the Disputed Excerpt, however, are not "statement[s]" *i.e.,* "assertion[s]," Fed.R.Evid. 801(a), of Mr. Luke or Mr. Miller, and so do not come within Rule 801(d)(2)(D).[7]

### 7.

Plaintiffs also argue that the Disputed Excerpt is admissible under Fed.R.Evid. 803(5) (recorded recollection).

---

**6.** It is clear that the "proponent[s]" of the evidence, the plaintiffs in these actions, are not responsible for the loss or destruction of the tapes made in Geneva or the transcripts made by the Rogers & Wells secretarial staff. Nor is Credit Lyonnais responsible for such loss or destruction.

**7.** It may also be noted that there is no evidence that Rogers & Wells adopted what Ms. Harrison said. *See Rock v. Huffco Gas & Oil Co.,* 922 F.2d 272, 281 (5th Cir.1991).

Under Rule 803(5), "[a]dmissibility should be determined question by question rather than by viewing the witness's testimony as a whole." 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 803.10[2] at 803–49 (2d ed.2000). For any portion of the Disputed Excerpt to be admitted, the witness would have to show "(1) that his memory of the events detailed in [it] is sufficiently impaired; (2) that he checked [it] when the events were fresh in his memory; (3) that at the time he checked [it], he knew that [it] correctly reflected his knowledge of the events." *Fincher v. County of Westchester,* 979 F.Supp. 989, 1005 (S.D.N.Y.1997). Here, the "events," *id.,* in question are what Ms. Harrison actually said.

Mr. Luke's deposition leaves the Court in substantial doubt whether portions of the Disputed Excerpt can be admitted under Rule 803(5) through him. Nevertheless, that does not mean that plaintiffs cannot make an attempt (outside of the hearing of the jury in the first instance) to show that one or more portions of the Disputed Excerpt can be admitted pursuant to Fed.R.Evid. 803(5).

8.

■ Even if the Disputed Excerpt were, as a matter of evidence law, admissible, the Court would exclude it pursuant to Fed.R.Evid. 403, except such portions as qualify for admission under Rule 803(5). Extensive briefing on substantive issues has made it quite clear that, to the extent anything that Ms. Harrison said during that portion of the interview that is reflected in the Disputed Excerpt is relevant, it is exactly what she said that is relevant. The Disputed Excerpt, for reasons already discussed, is not trustworthy evidence of exactly what she said. Thus, the Disputed Excerpt's "probative value is substantially outweighed by the danger of unfair preju-

dice, confusion of the issues, [and] misleading the jury ." Fed.R.Evid. 403.

9.

Credit Lyonnais' motion also seeks exclusion of testimony of Ms. Harrison concerning the Disputed Excerpt. The parties have not meaningfully briefed this issue, to the extent it is an issue separate from that of the admissibility of the Disputed Excerpt. The issue, if there is one, will be addressed at trial.

SO ORDERED.