**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Raymond SAWYER, Defendant-Appellant.**

No. 78–2098.

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1979.

Decided Aug. 16, 1979.

Rehearing Denied Dec. 6, 1979.

William J. Harte, Chicago, Ill., for defendant-appellant.

Thomas P. Sullivan, U. S. Atty., Scott Turow, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CASTLE, Senior Circuit Judge, and SWYGERT and BAUER, Circuit Judges.

BAUER, Circuit Judge.

The appellant Raymond Sawyer was charged by information on two counts of violating 26 U.S.C. § 7203 by failing to file timely income tax returns for the calendar years 1971 and 1972. Sawyer pleaded not guilty to the charges, but was found guilty by a jury. The court sentenced him to a one-year term of imprisonment on each count, with the sentences to run concurrently; in addition, the court fined Sawyer $10,000 on Count I. Sawyer now appeals.

In his first argument on appeal, Sawyer claims that the jury was improperly instructed on the meaning of "willful" as used in 26 U.S.C. § 7203. The court instructed the jury as follows:

As used in the statute . . . the word "willful" means voluntarily and purposeful and deliberate and intentional as distinguished from accidental, inadvertent or negligent.

Now, the failure to do an act is willfully done if it is done voluntarily and purposely and with a specific intent to fail to do what the law requires to be done; that is to say, with a bad purpose to disobey and disregard the law . . . .

In essence, Sawyer argues that the jury should have been instructed that his failure to file was not "willful" if it resulted from an "innocent reason" or "justifiable excuse." The omission of this language, Sawyer maintains, prevented the jury from considering his only defense, namely, that his physical and emotional condition rendered him incapable of filing his income tax returns on time.

However, in an *en banc* decision, this Court approved a jury instruction on "willfulness" that is virtually identical to the one given in this case. *United States v. McCorkle*, 511 F.2d 482, 484 n.2 (7th Cir. 1975), *cert. denied*, 423 U.S. 826, 96 S.Ct. 43, 46 L.Ed.2d 43 (1975). Like Sawyer, McCorkle argued that the instructions "had the effect of eliminating justifiable excuse as a consideration in resolving the issue of willfulness." *Id.* at 486. In rejecting the claim, the Court noted that only a limited set of circumstances could legally justify a

failure to file—namely, "an inadvertent failure to file or 'a bona fide misunderstanding as to [defendant's] . . . duty to make a return.'" The Court then reasoned that "[s]ince the instructions required the jury to find an intentional violation of a known legal duty, it would have been essential for the jury to conclude that McCorkle's conduct was unjustified." *Id.* Finding this logic applicable to the case at hand, we hold that the trial court did not commit reversible error in its instructions to the jury on the meaning of "willfulness."

Sawyer next challenges the trial court's instruction to the jury on false exculpatory statements. That instruction read:

Now, evidence has been introduced that the defendant made certain exculpatory statements, which were outside the courtroom, when he was interviewed, explaining his actions to show that he was innocent of the crime charged in an [sic] information. Now, evidence contradictory [sic] such statements has also been introduced and if you find that the exculpatory statements were untrue and that the defendant made them voluntarily and with knowledge of their falsity, you may consider such statements as circumstantial evidence of the defendant's consciousness of guilt.

This Court has recognized that a defendant's false, out-of-court exculpatory statements may be taken as evidence of guilt. *See, e. g., United States v. Riso*, 405 F.2d 134, 138 (7th Cir. 1968); *United States v. Lomprez*, 472 F.2d 860, 863 (7th Cir. 1972). The appellant argues, however, that the instruction did not require the jury to determine that he did in fact make the alleged statements. We are not persuaded by this claim, for, in our view, such a requirement is implicit in the language of the instruction, particularly since the appellant argued the issue to the jury. We thus find no grounds for reversal in the trial court's instruction on exculpatory statements.

The appellant next argues that the district court improperly admitted evidence

of an alleged phone conversation between Sawyer and Revenue Officer Schroeder. It is Sawyer's position that the conversation was not properly authenticated and that a memorandum which Schroeder prepared on the conversation was inadmissible hearsay.

On the issue of authentication, there is sufficient circumstantial evidence, in our view, to satisfy Rule 901(b)(6) of the Federal Rules of Evidence, for it is undisputed that the number listed in the agent's report was Sawyer's business number, and the personal nature of the information sought makes it highly unlikely that anyone else would have answered for Sawyer.

■ The admissibility of the agent's report, however, raises a more difficult issue. It would seem, as the government argues, that the report satisfies the criteria for admissibility as a recorded recollection under Fed.R.Evid. 803(5). The agent testified that he no longer had a recollection of the conversation and that the history sheet was prepared immediately after the conversation. In addition, the agent's testimony tended to show that both the original notation and its later transcription to the referral report were accurate.

Nevertheless, Sawyer claims that the referral report should have been excluded because it represents the report of a law enforcement officer. Relying heavily on *United States v. Oates*, 560 F.2d 45 (2d Cir. 1977), Sawyer argues that law enforcement reports that are barred under the "public records" exception of Fed.R.Evid. 803(8) are also inadmissible under any other exception to the hearsay rule. In *Oates*, the Second Circuit found "[a] clear congressional intent that reports not qualifying under FRE 803(8)(B) or (C) should, and would, be inadmissible against defendants in criminal cases." 560 F.2d at 72.

We are not persuaded, however, that the restrictions of Rule 803(8) were intended to apply to recorded recollections of a *testifying* law enforcement officer that would otherwise be admissible under Rule 803(5). In our view, the legislative history of Rules 803(8)(B) and (C) indicates that Congress intended to bar the use of law enforcement

reports as a substitute for the testimony of the officer. Thus, Representative Dennis, in offering the amendment which excluded law enforcement reports from admission at criminal trials, stated:

What I am saying here is that in a criminal case, . . . we should not be able to put in the police report to prove your case without calling policeman. I think in a criminal case you ought to have to call the policeman on the beat and give the defendant the chance to cross examine him, rather than just reading the report into evidence. That is the purpose of this amendment.

120 Cong.Rec. H 564 (Feb. 6, 1974). And the *Oates* court itself identified the loss of confrontation rights as the underlying rationale for Rule 803(8):

[The] pervasive fear of the draftsmen and of Congress that interference with an accused's right to confrontation would occur was the reason why in criminal cases evaluative reports of government agencies and law enforcement reports were expressly denied the benefit to which they might otherwise be entitled under FRE 803(8).

560 F.2d at 78. We therefore decline to hold that Rule 803(8) disqualifies the recorded recollections of a testifying law enforcement officer, when such recollections would otherwise be admissible under Rule 803(5). Accordingly, since the hearsay declarant in this case was available for cross-examination, and since the referral report would otherwise qualify as a recorded recollection, we find no reversible error in the admission of the report.

■ Finally, Sawyer claims that the trial court erred in excluding proof that he had eventually paid his taxes for 1971 and 1972. However, as this Court noted in *United States v. Ming*, 466 F.2d 1000, 1005 (7th Cir. 1972), "[i]t has been clearly established that late filing and late tax payment are immaterial on the issue of willfulness in a Section 7203 prosecution." We see no merit in the appellant's argument that this principle is somehow inapplicable to the case at hand because the government was allowed to

prove the amount of taxes that Sawyer owed for 1971 and 1972.

We have examined the appellant's other arguments and find no grounds for reversal. The judgment of the district court is therefore AFFIRMED.

SWYGERT, Circuit Judge, concurring in the result.

With some reluctance, I concur in the affirmance of defendant's conviction. My reluctance stems from the admission of Revenue Officer Schroeder's reading from his referral report dated January 14, 1974 which stated that "a phone call was made to the taxpayer's husband who stated that the 1040 returns . . . 1971 and 1972 had been filed."

An examination of the referral report shows that it comes within the literal definition of records excluded pursuant to section 803(8)(B) of the Federal Rules of Evidence: "[M]atters observed pursuant to duty imposed by law as to which matters there was a duty to report, *excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel.*" (emphasis added).

The problem here is whether section 803(8)(B) is inapplicable because of the operative effect of section 803(5) which reads in its entirety:

*Recorded recollection.* A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

Officer Schroeder testified that he obtained defendant's telephone number from defendant's wife in September 1973 and that it was his routine practice to attempt to contact a taxpayer under investigation by telephone in such circumstances. He further testified that it also was routine to record all taxpayer contacts on a history sheet and that notations reflecting phone calls would be made immediately after the calls were completed.

Officer Schroeder said that he had no independent recollection of his phone conversation with defendant and that the history sheet on defendant had been destroyed after he had closed his part of the investigation. He testified that he had used the history sheet to prepare his referral report—the disputed document.

Although we are dealing with a record of a record, not made contemporaneously with the event, and in a sense double hearsay, I am satisfied that the requirements of section 803(5) were met. Because Schroeder was available as a witness for both foundation purposes and cross-examination, the hearsay was admissible under the Federal Rules of Evidence and the defendant was not deprived of the right of confrontation. If Officer Schroeder had not been available for cross-examination, defendant's right of confrontation would have been violated and a different result would have been compelled. *See United States v. Oates,* 560 F.2d 45 (2d Cir. 1977).