Kenneth PARKER, Plaintiff–Appellant,

v.

REDA, C.O., Norfleet, C.O., Krusen, Sgt. & Rita A. Brannen, Defendants–Appellees,

and

Estate of Charles Harrison, Sing Sing Corr. Fac. & C. Grainer, Supt., Defendants.

Docket No. 02–0025.

United States Court of Appeals, Second Circuit.

Argued: April 9, 2003.

Decided: April 28, 2003.

Martin J. Valasek, White & Case, New York, NY, for Plaintiff–Appellant.

Patrick J. Walsh, Assistant Solicitor General, State of New York (Eliot Spitzer, Attorney General, Michael S. Belohlavek, Deputy Solicitor General, on the brief), New York, NY, for Defendants–Appellees.

Before: JACOBS, STRAUB, Circuit Judges, and WOOD, District Judge.*

PER CURIAM.

Kenneth Parker's suit under 42 U.S.C. § 1983 seeks damages on the ground that excessive force was used against him during an incident that occurred while he was an inmate at Sing Sing Correctional Facility. Parker appeals from a final judgment entered, after a jury verdict, in the United States District Court for the Southern District of New York (Stein, *J.*), dismissing Parker's civil rights action against Sergeant Robert Krusen ("Sgt.Krusen"), and

---

* The Honorable Kimba M. Wood, District Judge of the United States District Court for the Southern District of New York, sitting by designation.

Corrections Officers Frank Reda, Barry Norfleet, and Charles Harrison.[1]

On appeal, Parker argues that the district court abused its discretion under Fed. R.Evid. 803(5) in permitting Sgt. Krusen, who remembered nothing of the incident, to read into evidence a memorandum signed by him and dated May 23, 1999, the day of the incident. Parker seeks a new trial.

## DISCUSSION

■ District courts exercise broad discretion in making evidentiary rulings. This Court will order a new trial only if the introduction of inadmissible evidence was "a clear abuse of discretion and was so clearly prejudicial to the outcome of the trial that 'we are convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" *Luciano v. Olsten Corp.*, 110 F.3d 210, 217 (2d Cir.1997) (quoting *Hygh v. Jacobs*, 961 F.2d 359, 365 (2d Cir.1992)). "In general, this court will not overturn a trial judge's evidentiary rulings unless the judge acted arbitrarily or irrationally." *United States v. SKW Metals & Alloys, Inc.*, 195 F.3d 83, 88 (2d Cir.1999) (internal quotation marks omitted); *see also Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 150 (2d Cir.1997) ("[E]ven an erroneous evidentiary ruling will not lead to reversal unless affirmance would be 'inconsistent with substantial justice.'" (quoting Fed.R.Civ.P. 61)).

### I

■ Rule 803(5) of the Federal Rules of Evidence is an exception to the hearsay rule for past recollection recorded. To constitute such a recorded recollection, a memorandum must:

> concern[ ] a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, [and be] shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly.

Fed.R.Evid. 803(5). If admitted, the memorandum may be read into evidence, but may not itself be received as an exhibit unless offered by an adverse party. *Id.*

■ Before the Krusen memorandum could be read into evidence, a showing was required that (1) Sgt. Krusen's memory of the events detailed in the memorandum was sufficiently impaired; (2) he prepared or adopted the memorandum at or near the time of the events; and (3) at the time he prepared or adopted it, it correctly reflected his knowledge of the events. *See id.; Bank of Brussels Lambert v. Credit Lyonnais*, 168 F.Supp.2d 57, 62 (S.D.N.Y. 2001); *Trouble v. Wet Seal*, 179 F.Supp.2d 291, 300 (S.D.N.Y.2001); *Fincher v. County of Westchester*, 979 F.Supp. 989, 1005 (S.D.N.Y.1997).

It is undisputed that, at the time of trial, Sgt. Krusen had no present recollection of the May 23, 1999 incident, and that the first of these requirements was therefore satisfied. Moreover, given that the memorandum bore the signature of Sgt. Krusen and was dated the day of the incident, we think the following excerpts from Sgt. Krusen's testimony are adequate to satisfy the second and third requirements:

> Q. Based on your reading of [the memorandum] is that a document that you yourself wrote?

---

1. Charles Harrison was killed in a car accident in October 2000. His estate and Rita A. Brannen were substituted as parties.

A. Yes it is.

Q. And based upon your reading of that document at the time did you in fact have personal knowledge of what occurred during that incident?

A. Yes.

\* \* \* \* \* \*

[Q.] Did you, without describing this document, sir, did you write it?

A. Yes, I did.

Q. And did you write it at or about the date that it bears?

A. Yes, I did.

Q. Does that document reflect your knowledge of the event as of the date that it bears?

A. Yes, it does.

\* \* \* \* \* \*

Q. And do you have reason to believe that this document correctly reflects your knowledge as of May 23rd, 1999?

A. Yes, I do.

Tr. at 136, 143–45.[2]

This testimony sufficiently supports the district court's implicit findings that Sgt. Krusen prepared the memorandum on or about the date of the incident and that it accurately reflected his knowledge at that time, notwithstanding his inability (at the time of trial) to remember the event itself—or even his statement on cross-examination that he did not specifically remember writing the memorandum. *See* Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 803(5)[01], at 803–181 (1996) ("[I]t is sufficient if the witness testifies that he knows that a record of this type is correct because it was his habit or practice to record such matters accurately."); *see also* Fed.R.Evid. 803(5) Advisory Comm. Note ("No attempt is made in the exception to spell out the method of establishing the initial knowledge or the contemporaneity and accuracy of the record, leaving them to be dealt with as the circumstances of the particular case might indicate."). Since the requirements of Rule 803(5) were satisfied, it was not error to allow Sgt. Krusen to read the contents of the memorandum into evidence.

## II

Parker argues that this ruling cannot be squared with the district court's earlier ruling that the memorandum lacked sufficient indicia of reliability standing on its own—without Sgt Krusen's testimonial sponsorship—to be admitted under the business records exception found in Fed. R.Evid. 803(6). Parker contends that Sgt. Krusen's testimony added no increment of reliability.

■ The business records and recorded recollection exceptions to the hearsay rule are based on different rationales, and there is nothing inherently inconsistent about the admission, under 803(5), of evidence ruled inadmissible under 803(6). *See Trouble*, 179 F.Supp.2d at 299–300; *see also United States v. Oates*, 560 F.2d 45, 66 (2d Cir.1977) (stating that, absent express congressional intent otherwise, "there is no question that hearsay evidence failing to meet the requirements of one exception may nonetheless satisfy the standards of another exception").

■ Business records are made reliable by "systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by duty to make an accurate record as part of a continuing job or occupation." Fed.R.Evid. 803(6) Advisory Comm. Note. For this reason, busi-

**2.** Citations to "Tr. at ___" reference pages in the trial transcript.

ness records may be admitted notwithstanding the unavailability of the record's author, so long as a "custodian or other qualified witness" testifies that the document was "kept in the course of a regularly conducted business activity and also that it was the regular practice of that business activity to make the [record]." *United States v. Williams,* 205 F.3d 23, 34 (2d Cir.2000) (quoting *United States v. Scarpa,* 897 F.2d 63, 70 (2d Cir.1990)); *see also Phoenix Assocs. III v. Stone,* 60 F.3d 95, 101 (2d Cir.1995) (stating that "[t]he custodian need not have personal knowledge of the actual creation of the document" to lay a proper foundation for the receipt). Adoption of Rule 803(6) followed reform efforts to "relax[ ] the requirement of producing as witnesses, or accounting for the nonproduction of, all participants" in the gathering and recording of ordinary business records. Fed.R.Evid. 803(6) Advisory Comm. Note.

Evidence of recorded recollection, on the other hand, is inadmissible unless a witness, who once had knowledge of what the record contains, testifies. *See* Fed.R.Evid. 803(5); Weinstein's Federal Evidence § 803(5)[01], at 803–181 (stating that recorded recollection requires that "accuracy [be] vouched for by each participant in the chain"). Sgt. Krusen's inability to recall the May 23 incident made cross-examination as to his memory of that incident impossible, which, Parker argues, is "fatal." It suffices, however, that Sgt. Krusen was available for cross-examination on other subjects that bear upon the reliability of the document: his capacity for observation, his general credibility, his narrative abilities, and the circumstances under which use-of-force memoranda, such as the one at issue, were ordinarily prepared (including whether such preparation was done in anticipation of litigation).

Because the evidence here was admitted as recorded recollection rather than as a business record, "[t]he accompanying testimony of the author minimize[d] the danger of unreliability by giving the trier of fact the opportunity to weigh [the author's] credibility and consider the circumstances [likely to have] surround[ed] the preparation of the report." *See United States v. King,* 613 F.2d 670, 673 (7th Cir.1980) (citing *United States v. Sawyer,* 607 F.2d 1190 (7th Cir.1979)).

## III

■ Parker also argues, in his reply brief, that it was particularly prejudicial for the jury to hear the concluding sentence of Sgt. Krusen's report, which states that "[t]he amount of force used was minimal and only that much necessary to gain control of the inmate." Parker contends that this is a conclusory statement on the ultimate issue facing the jury, namely whether the use of force was excessive or malicious, and that hearing this statement impeded the jury from fairly assessing the parties' differing versions of the incident.

Although we think that the better practice would be to exclude such a conclusory statement, in this case its admission was harmless in light of two facts: (1) Sgt. Krusen was available for cross-examination concerning his credibility on this point (e.g., to be asked whether he had ever concluded in an incident report that there *had* been undue use of force); and (2) the record included opposing accounts of the use of force that were sufficiently detailed to permit the jurors to draw their own conclusions as to whether the force used was proper.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.