Electronically Filed
Supreme Court
SCWC-17-0000087
28-JUN-2019
11:06 AM

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

NINO ABRIGO,
Petitioner/Defendant-Appellant.

SCWC-17-0000087

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-17-0000087; CASE NO. 1DTA-16-01924)

JUNE 28, 2019

McKENNA, POLLACK, AND WILSON, JJ., WITH RECKTENWALD, C.J.,
DISSENTING, WITH WHOM NAKAYAMA, J., JOINS

OPINION OF THE COURT BY POLLACK, J.

An exception to the evidentiary rule against hearsay typically allows public records to be admitted into evidence to prove the truth of their contents, as such documents are generally presumed to be accurate and reliable. The rule contains two exclusions, however, that collectively prohibit using the public record exception to admit observational and

investigative police reports against defendants in criminal cases. These exclusions ensure that law enforcement personnel testify in person when the contents of their police reports are sought to be admitted as evidence in a trial, thereby allowing the defendant an opportunity to confront and cross-examine police officers regarding statements in their reports.

However, another hearsay exception in our evidentiary rules permits the previously recorded recollections of a witness to be read into evidence when the witness is unable to sufficiently recall the subject matter of the statements to testify fully and accurately at trial. Applied literally, this second exception would appear to provide a path to circumvent the prohibition on the use of observational and investigative police reports against defendants in criminal cases. This path of circumvention oddly would only occur when the law enforcement official who prepared or signed-off on the report testifies to insufficient recollection of the events underlying the report to be subject to meaningful cross-examination. Such a situation occurred in this case, resulting in the defendant being convicted on the sole basis of a police report authored by a law enforcement officer who testified at trial that he could no longer remember the material facts underlying the defendant's arrest.

We now hold that records excluded by the public records exception cannot be read into evidence based on an alternative evidentiary ground. This is to say that litigants may not utilize another hearsay exception as a back door to bypass the restrictions contained in the public records hearsay exception. Accordingly, we vacate the defendant's conviction and remand the case for further proceedings.

## I. FACTS AND PROCEDURAL BACKGROUND

### A. Trial

On May 26, 2016, the State filed a criminal complaint against Nino Abrigo in the Hawai'i District Court of the First Circuit (district court), charging him with operating a vehicle under the influence of an intoxicant (OVUII) in violation of Hawai'i Revised Statutes (HRS) § 291E-61(a)(1).[1] Abrigo pleaded not guilty, and a bench trial commenced on August 1, 2016.[2]

The only witness called by the State was Officer Aaron Ostachuk of the Honolulu Police Department. Due to a series of

---

[1] HRS § 291E-61(a)(1) (2007) provides as follows:

A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle: (1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

[2] The Honorable James H. Ashford presided.

continuances, Officer Ostachuk's testimony was delivered on three separate days over the course of five months.

### 1. August 1, 2016

On the first day that he testified, Officer Ostachuk related that he first encountered Abrigo at approximately 3:00 a.m. on May 15, 2016, while on traffic patrol in the Dillingham-Kalihi area of the island of Oahu. The officer stated that he saw the vehicle driven by Abrigo commit two traffic violations; first, the vehicle drifted across the broken white lines that separated its lane from other lanes going the same direction, then the vehicle swerved back to straddle the solid yellow lines separating the lane from oncoming traffic. Officer Ostachuk testified that he initiated a traffic stop of the vehicle based on these infractions.

When he approached the driver-side window, Officer Ostachuk stated, he noticed that Abrigo's eyes were "red, watery, and glassy" and the smell of alcohol was emanating from inside the vehicle. Abrigo complied with his request to exit the vehicle, the officer explained, and agreed to take the standard field sobriety test (SFST).[3]

---

[3] The parties stipulated that

Officer Ostachuk was trained and qualified pursuant to the standards of National Highway Traffic Safety Administration, also known as NHTSA, as well as Honolulu Police Department, also known as HPD, to administer and

(continued . . .)

4

Officer Ostachuk testified that Abrigo followed his instructions during the first part of the SFST, the horizontal gaze nystagmus test (HGN).  Officer Ostachuk explained that after he administered the HGN, he placed Abrigo in the starting position for the "walk-and-turn" test--the second part of the SFST--and explained the instructions, telling Abrigo not to start walking until he was told to begin.[4]  While the officer was relating the instructions, he testified, Abrigo began to sway from side to side.  Abrigo also started to walk before being told to do so, the officer stated.  Although Abrigo complied when he was told to begin walking, the officer said, he exhibited several clues of intoxication: he stopped three times, he missed seven heel-to-toe steps, he raised his arms four times, and he did not take the correct number of steps.  Additionally, Officer Ostachuk stated that Abrigo stepped to the side seven times, then clarified that because "there [was] no

---

(. . . continued)

> evaluate the standardized field sobriety test, which is comprised of three different exercises, being the horizontal gaze nystagmus, also called HGN, the walk-and-turn, and the one-leg stand, but that the officer would not testify as to whether any nystagmus was observed when the HGN test was administered, and that the officer would not give an expert opinion as to whether the defendant passed or failed any portion or the entirety of the standardized field sobriety test.

[4]     Officer Ostachuk testified that he instructed Abrigo to walk nine "heel to toe" steps in a straight line with his arms at his side, then turn around and walk nine steps back--all without stopping.

straight line . . . long enough to use" at the location where he administered the SFST, he based this assessment on Abrigo's failure to "step[] one foot in front of another in a straight line."

When Abrigo reached the "turn" part of the test, he was able to execute it, Officer Ostachuk testified. But when asked to describe Abrigo's turn, the officer said, "I do not recall. It was[] nothing out of the ordinary or I would note it down." Shortly thereafter, the trial was continued because it was late in the day. Although the transcript indicates trial was initially scheduled to continue on October 19, 2016, proceedings did not recommence until December 15, 2016, for reasons undisclosed in the record.

### 2. December 15, 2016

When the State resumed its direct examination of Officer Ostachuk on December 15, 2016, the officer stated that Abrigo was off-balance when completing the turn portion of the walk-and-turn test because "[h]e had his knees slightly bent." He explained that he interprets a person bending their knees as indicating "that they can't keep themselves upright in an up--in the standing position, and they use that bending in order to regain themselves." Officer Ostachuk then testified that he explained the instructions for the "one-legged stand" test, the

6

third part of the SFST, and administered it.[5]  He described several clues of intoxication that he said Abrigo exhibited during this test, including swaying, raising his arms, hopping after losing his balance, and putting his foot down.

On cross-examination, defense counsel questioned Officer Ostachuk about his memory of Abrigo's traffic violations, and the officer testified that he could not remember the specific details.  Specifically, he stated that he could not remember how far or for how long Abrigo crossed over the broken white line or straddled the solid yellow line.  Officer Ostachuk also testified that he could not remember his exact reason for pulling Abrigo over without looking at the report that he created that documented his interaction with Abrigo.[6]

When asked whether he "independently remember[ed] giving [Abrigo] the instructions" to the SFST, Officer Ostachuk answered, "[I]t's not something off the top of my head I remember specifically, . . . I just remember these--this is what I instruct people to do."  The defense then asked Officer Ostachuk if he remembered "why [he] checked off the box

---

[5]     Officer Ostachuk testified that he instructed Abrigo to keep his arms at his side, keep his feet together, raise one leg six inches above the ground, and count to thirty.

[6]     The record does not contain the document referenced in Officer Ostachuk's testimony.  Defense counsel referred to the document as a "report," while the prosecutor referred to it as an "SFST form."  For the sake of clarity, this opinion uses the more general "report" term.

'starting too soon'" in his report, and he responded that he could not remember.

Nor could Officer Ostachuk independently recall why he marked the box in his report indicating that Abrigo could not keep his balance during the walk-and-turn test. When asked directly if he could remember his reasoning, the officer responded, "No. It's just something that I observed at the time, and I checked off the box." When asked whether his testimony was "just based on that box being checked off" on his report, he answered, "That's correct."

Defense counsel then asked, "Do you actually remember [that] h[e] stop[ped] walking? Or was that testimony based on what is contained in the report?" The court, sua sponte, did not allow the witness to answer because it said that the question was misleading. Outside of Officer Ostachuk's presence, the court clarified that it viewed the question as "blur[ing the] distinctions" between Officer Ostachuk's "memory four months ago when he testified and today." The "crux of the case," the court stated, was "not what he remembers today," but rather whether Officer Ostachuk was "testifying based on a present memory" or "just parroting what was in a report" on August 1 when he testified on direct examination.

After Officer Ostachuk reentered the courtroom, defense counsel inquired at length as to whether his testimony

on August 1 regarding the SFST had been based on his memory at the time or simply reviewing his report. Officer Ostachuk repeatedly replied that he did not recall what had been asked and what he had testified to during the August 1 examination, nor what he had remembered at that time. When defense counsel inquired into his present recollection, Officer Ostachuk stated that he did not have independent memory regarding any aspect of the SFST and could testify only based on what was written in his report. The trial was then continued again for reasons that are not reflected in the record.

### 3. December 30, 2016

On December 30, 2016, the defense resumed its cross-examination of Officer Ostachuk. The officer once more testified that he could not independently recall any details about Abrigo's performance on the SFST. He acknowledged that his testimony was solely based on looking at his report and the annotations it contained.[7] As to Abrigo's performance during the one-legged stand test, Officer Ostachuk again said that he did not recall whether he had had an independent recollection of Abrigo's performance when he had testified on August 1.

---

[7] Officer Ostachuk stated, "I don't remember exactly the things I annotated in my report him doing. I just remember giving the SFST and then annotating the stuff in my report that he did."

Defense counsel moved to strike Officer Ostachuk's testimony about the SFST, arguing that the officer lacked independent recollection about the tests and therefore could not be effectively cross-examined. The court denied the motion and said that it would "not put on the record now, in the officer's presence, the reasons for that because he would still be testifying."

During re-direct examination, the State asked Officer Ostachuk whether "the clues that [he] marked off on the SFST sheet reflect what [he] observed at the time that [he] actually administered the SFST," but the court sustained an objection by the defense. The State then elicited testimony indicating that Officer Ostachuk had a recollection of "other things that happened that day" that were not in his report. Specifically, Officer Ostachuk recalled having a conversation with Abrigo, that Abrigo was cordial and cooperative, and the type of car that Abrigo was driving. After Officer Ostachuk's testimony concluded, the State rested. The defense did not present any evidence.

The court proceeded to find Abrigo guilty as charged. Although the court found that the officer had "very limited recollection" when he testified on December 15, 2016, and "almost no recollection" when he testified on December 30, 2016, it concluded that his testimony on August 1, 2016, "was a

product of then-present recollection." The court also concluded that the defense had had an opportunity to effectively cross-examine the officer. Abrigo was sentenced to 72 hours of community service and was required to complete a substance abuse assessment class and pay court fees. Abrigo filed a timely appeal.

### B. ICA Proceedings

On appeal, Abrigo argued that the court had erred in denying his motion to strike Officer Ostachuk's testimony, which was inadmissible because the officer did not have a present recollection throughout the trial regarding the events to which he testified. Abrigo contended that even assuming Officer Ostachuk had present recollection of administering the SFST when he testified on August 1, 2016, he indisputably lacked such recollection when he was cross-examined at the continued trial. This did not afford him a meaningful opportunity to cross-examine Officer Ostachuk regarding his testimony, Abrigo argued, and it thus violated his rights to confrontation and cross-examination under the Hawai'i Constitution. Without this erroneously admitted testimony, Abrigo concluded, there was no evidence to support his conviction of OVUII.

In response, the State argued that even if Officer Ostachuk lacked the present recollection required to testify regarding the SFST, the officer's statements in his report were

themselves admissible under Hawai'i Rules of Evidence (HRE) Rule 802.1(4), the past recollection recorded exception to hearsay. Abrigo countered in reply that Officer Ostachuk's testimony was inadmissible under the past recollection hearsay exception because (1) the State did not establish an adequate foundation to satisfy this exception, (2) admitting contents of a police report would contradict and nullify the public records and business records exceptions to hearsay, (3) the contents of Officer Ostachuk's report did not have adequate indicia of reliability, and (4) Officer Ostachuk's testimony violated Abrigo's rights to confrontation and cross-examination under the state and federal constitutions.

The Intermediate Court of Appeals (ICA) held that it was clear that Officer Ostachuk's testimony regarding Abrigo's performance on the SFST was not from his present recollection. However, the ICA concluded that Officer Ostachuk's testimony was nonetheless admissible under the past recollection recorded exception. Relying on State v. Bloss, 3 Haw. App. 274, 649 P.2d 1176 (1982), the ICA determined that Officer Ostachuk's report satisfied the past recollection recorded exception because it was "a record concerning Abrigo's OVUII charge of which Officer Ostachuk once had personal knowledge but at trial had insufficient recollection to enable him to testify fully and accurately." And the SFST form accurately reflected Officer

Ostachuk's knowledge of the tests, the ICA held, because the officer testified that he filled out the form at the same time that he administered the tests and regularly made accurate records of the same kind.

The ICA also held that Officer Ostachuk's testimony did not violate Abrigo's right to confrontation or cross-examination because "a witness who appears at trial and testifies satisfies the confrontation clause, even though the witness claims a lack of memory that precludes them from testifying about the subject matter of their out-of-court statement."  (Quoting State v. Delos Santos, 124 Hawai'i 130, 145, 238 P.3d 162, 177 (2010).)  Thus, the ICA affirmed the judgment of conviction.  Abrigo filed a timely application for a writ of certiorari, which we granted.

## II. STANDARD OF REVIEW

The admissibility of evidence requires different standards of review depending on the particular rule of evidence at issue.  State v. Cordeiro, 99 Hawai'i 390, 403-04, 56 P.3d 692, 705-06 (2002); State v. Pulse, 83 Hawai'i 229, 246, 925 P.2d 797, 814 (1996).  "[W]here the admissibility of evidence is determined by application of the hearsay rule, there can be only one correct result, and 'the appropriate standard for appellate review is the right/wrong standard.'"  State v. Moore, 82 Hawai'i

13

202, 217, 921 P.2d 122, 137 (1996) (quoting <u>Kealoha v. Cty. of Hawaii</u>, 74 Haw. 308, 319, 844 P.2d 670, 675 (1993)).

### III. DISCUSSION

Abrigo argues that the ICA erred in holding that Officer Ostachuk's testimony regarding the contents of his report was admissible under the HRE Rule 802.1(4) past recollection recorded hearsay exception.[8]  He contends that the past recollection recorded hearsay exception must be interpreted to exclude statements contained in police reports to avoid effectively nullifying the law enforcement records exclusion in the separate HRE Rule 803(b)(8) public records hearsay exception.[9]

### A. The Public Records and Past Recollection Recorded Hearsay Exceptions

The HRE Rule 803(b)(8) public records hearsay exception allows for the admission of certain "[r]ecords, reports, statements, or data compilations, in any form, of

---

[8]  Although the district court did not admit Officer Ostachuk's testimony under the past recollection recorded exception, the ICA did not err in considering the State's alternate grounds for admissibility.  Our caselaw states that "where the decision below is correct it must be affirmed by the appellate court even though the lower tribunal gave the wrong reason for its action."  <u>State v. Pacquing</u>, 139 Hawai'i 302, 313 n.19, 389 P.3d 897, 908 n.19 (2016) (quoting <u>State v. Taniguchi</u>, 72 Haw. 235, 239, 815 P.2d 24, 26 (1991)).  Accordingly, we review the district court's admission of the officer's testimony under the past recollection recorded exception.

[9]  Given our disposition of this issue, we need not reach Abrigo's alternative contention that the foundational requirements for the admission of Officer Ostachuk's report under the HRE Rule 802.1(4) past recollection recorded hearsay exception were not met in this case.

14

public offices or agencies."[10]  The provision has three distinct subsections, the latter two of which are relevant in this case. The second subsection, HRE Rule 803(b)(8)(B), permits the admission of public records setting forth "matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel."  The third, HRE Rule 803(b)(8)(C), allows for the admission of public records containing "factual findings resulting from an investigation made pursuant to authority granted by law," but only "in civil proceedings and against the government in criminal cases."

---

[10]     HRE Rule 803(b)(8) provides as follows:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(b) Other exceptions.

. . . .

(8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil proceedings and against the government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

15

This court outlined the contours of these two subsections in State v. Davis, a criminal case in which we considered the admissibility of a technician's sworn statements indicating that, based on the technician's expert interpretation of data produced by an accuracy test, an Intoxilyzer was working properly when it measured a defendant's breath sample. 140 Hawaiʻi 252, 254, 400 P.3d 453, 455 (2017). In analyzing whether the out-of-court statements should have been admitted pursuant to HRE Rule 803(b)(8)(B), we noted that the phrase "matters observed" could be interpreted as "encompassing all 'records describing an almost endless variety of acts, events, and conditions in the world observed and depicted by public officials.'" Id. at 257-58, 400 P.3d at 458-59 (quoting Christopher B. Mueller & Laird C. Kirkpatrick, Evidence § 8.50, at 910 (5th ed. 2012)). This court determined, however, that the phrase was intended to have a "narrower meaning" than its literal application: it was meant to apply only to "information that is concrete and simple in nature" such as "routine recordations not resulting from analysis or judgment." Id. at 258, 400 P.3d at 459 (quoting Addison M. Bowman, Hawaii Rules of Evidence Manual § 803-3[8][D], at 8-44 (2016-2017 ed.)). Thus, under Davis, HRE Rule 803(b)(8)(B) allows the admission of public records containing simple, non-evaluative information about matters observed by public officials. However, the

16

provision expressly excludes from its reach any such data contained in a law enforcement report when it is offered in a criminal case.

By contrast, this court stated that public records containing "conclusions or opinions that flow from a factual investigation" are properly evaluated under HRE Rule 803(b)(8)'s third subsection, which governs public records setting forth "factual findings resulting from an investigation made pursuant to authority granted by law."  Id. (quoting Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 164 (1988)).  Under this separate provision, such records are admissible in a criminal case only when offered against the government--and not against the defendant.  Id. at 260 n.18, 400 P.3d at 461 n.18.  This is true irrespective of whether the document is authored by law enforcement.  See id.  Because the statement in Davis that the Intoxilyzer was correctly calibrated was an "interpretive conclusion" based on the technician's evaluation of data collected through the accuracy test, this court held that it was not a "matter observed" governed by HRE Rule 803(b)(8)(B), but rather a "factual finding" that was inadmissible against the defendant under HRE Rule 803(b)(8)(C).[11]  Id. at 260, 400 P.3d at 461.

---

[11]    Because Davis held that the statements were not "matters observed," we did not address whether the technician qualified as a "police

(continued . . .)

In sum, HRE Rule 803(b)(8)(B) excludes observations by law enforcement personnel in public record reports when offered in a criminal case. And HRE Rule 803(b)(8)(C) excludes evaluative public record reports regardless of the author when offered against the defendant in a criminal case. The two provisions operate together to prohibit the use of the public records exception to admit law enforcement reports against the defendant in a criminal case, be they purely observational, evaluative, or some combination of the two.[12] Yet the HRE Rule 802.1(4) past recollection recorded hearsay exception would on its face offer a loophole capable of circumventing this exclusion in certain circumstances.

HRE Rule 802.1(4) makes admissible a statement "previously made by [a testifying] witness[]" in a "memorandum or record" if the evidence demonstrates that the witness (1) once had knowledge of the events underlying the record, (2) has insufficient recollection of the events at trial, (3) made the

---

(. . . continued)

officer [or] other law enforcement personnel" for purposes of the exception. Davis, 140 Hawai'i at 257 n.13, 400 P.3d at 458 n.13.

[12] Officer Ostachuk's report is a "report made by a law enforcement official in an on-the-scene investigation"--the precise type of document that is covered by the law enforcement exclusion within the HRE Rule 803(b)(8) public records hearsay exception. United States v. Hernandez-Rojas, 617 F.2d 533, 535 (9th Cir. 1980). We thus need not classify the individual statements it contains as observational or evaluative, as they are inadmissible against Abrigo under the public records hearsay exception in any event.

record when the event was fresh in the witness's mind, and (4) accurately recorded the events in the memorandum or record.[13] Addison M. Bowman, Hawaii Rules of Evidence Manual § 802.1-5[2], at 8-18 (2018-2019 ed.). The text of the past recollection recorded exception would therefore appear to allow the use of law enforcement reports against the defendant in a criminal case--which is specifically prohibited under the public records exception--but only when the official who prepared or signed the document testifies to a lack of sufficient memory to be fully and accurately cross-examined on the matters in the report.

## B. Hawai'i Caselaw Indicates that the Contents of Records Excluded by the Public Records Exception Cannot Be Read into Evidence Through Another Hearsay Exception

Hawai'i caselaw offers guidance as to how this apparent conflict should be resolved. This court addressed a similar attempt to circumvent the public record exception's restrictions

---

[13]     HRE Rule 802.1(4) provides as follows:

The following statements previously made by witnesses who testify at the trial or hearing are not excluded by the hearsay rule:

. . . .

(4) Past recollection recorded. A memorandum or record concerning a matter about which the witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

in Davis.  As explained, the State sought in Davis to enter a technician's statements regarding the accuracy of an Intoxilyzer.  140 Hawaiʻi at 254, 400 P.3d at 455.  The State argued that even if the technician's statements were not admissible under the public records hearsay exception, the HRE Rule 803(b)(6) business records hearsay exception was an alternative ground through which the document could be admitted.  Id. at 265, 400 P.3d at 466.  On review, this court held that "[a]lthough ordinarily the proponent of hearsay is entitled to 'shop around' among the exceptions, the public records exception preempts" the business record exception as it applies to public records and "forecloses access to business records admissibility."  Id. (quoting Addison M. Bowman, Hawaii Rules of Evidence Manual § 803-3[6][F], at 8-41 (2016-2017 ed.) (some alterations omitted).  We therefore held that "records excluded by [the public records exception] cannot be admitted through the 'back door' as a business record."  Id. (citing United States v. Weiland, 420 F.3d 1062, 1074 (9th Cir. 2005); United States v. Orellana-Blanco, 294 F.3d 1143, 1149 (9th Cir. 2002); United States v. Cain, 615 F.2d 380, 382 (5th Cir. 1980)); see also State v. Hammell, 917 A.2d 1267, 1271 (N.H. 2007) (holding the identically worded New Hampshire public records exception cannot be circumvented using the business record exception because doing so would enable "an end run around one of the very

purposes for which [the public records exception] was promulgated"--namely, the exclusion of police records when offered against the defendant in a criminal case).

Thus, this court's precedent strongly suggests that public records that are inadmissible under the hearsay exception specifically governing such records may not be read into evidence at trial under an alternative hearsay rule. The past recollection recorded exception would serve as no less a "back door" to the admission of documents that the public records exception specifically prohibits than the business record exception, and it would stand to reason that it would likewise be "preempt[ed]" and "foreclose[d]" when applied to public records. Davis, 140 Hawai'i at 265, 400 P.3d at 466 (quoting Bowman, Hawaii Rules of Evidence Manual § 803-3[6][F], at 8-41 (2016-2017 ed.).

## C. Other Jurisdictions Have Declined to Admit Police Reports Through Hearsay Exceptions Other than the Public Records Exception, Including as Recorded Past Recollections

When faced with the precise question at issue in this case, the United States Court of Appeals for the Ninth Circuit applied much the same reasoning employed in Davis to the federal equivalents of the public records and past recollection recorded hearsay exceptions.[14] In United States v. Pena-Gutierrez, the

---

[14] Federal cases interpreting the Federal Rules of Evidence (FRE) serve as "persuasive authority in interpreting similar provisions of the
(continued . . .)

court considered the admission of an Immigration and Naturalization Service report containing statements made by an undocumented person about his attempt to cross the border while hidden in the defendant's car.  222 F.3d 1080, 1084-85 (9th Cir. 2000).  Relying on an earlier case that had analyzed the admission of public records under the federal equivalent of the business records hearsay exception, the Ninth Circuit held that the trial court had erred by admitting the report under the past recollection recorded hearsay exception, explaining that law enforcement reports are admissible "if at all, only under the public-records exception."  Id. at 1087 (citing United States v. Orozco, 590 F.2d 789, 793 (9th Cir. 1979)).  The court went on to find the report inadmissible under the public records hearsay exception because, much like Officer Ostachuk's report in the present case, it was an "on-the-scene investigative report of a crime" falling squarely within the law enforcement exclusion.

---

(. . . continued)

[HRE]."  State v. Fitzwater, 122 Hawai'i 354, 383 n.5, 227 P.3d 520, 549 n.5 (2010) (citing State v. Jhun, 83 Hawai'i 472, 478, 927 P.2d 1355, 1361 (1996)).  At least one scholar has also noted the tension between the federal equivalents of these provisions, stating that there is a "serious question" about the admissibility of police reports under the past recollection recorded exception.  Professor Michael H. Graham, one of the nation's leading scholars on evidence, cautions that courts should be "extremely reluctant" to admit police reports under the past recollection recorded exception because Congress has had the opportunity to amend the exclusion for police observations and has consistently declined "to credit the accuracy of documents prepared by law enforcement personnel purporting to recount criminal investigations."  7 Michael H. Graham, Handbook of Federal Evidence § 803:5 (8th ed. 2017).

Id. (quoting United States v. Wilmer, 799 F.2d 495, 501 (9th Cir. 1986); see also United States v. Hernandez-Rojas, 617 F.2d 533, 535 (9th Cir. 1980) ("[T]he subjective report made by a law enforcement official in an on-the-scene investigation . . . lack[s] sufficient guarantees of trustworthiness because [it is] made in an adversary setting [and is] likely to be used in litigation.").

Courts of a number of other jurisdictions have similarly stated that hearsay in public records may not be admitted through the back door of another hearsay exception, suggesting that the document must comply with the restrictions built into the public records exception to be admissible. See Air Land Forwarders, Inc. v. United States, 172 F.3d 1338, 1345 (Fed. Cir. 1999); United States v. Brown, 9 F.3d 907, 911 (11th Cir. 1993); Fischer v. State, 207 S.W.3d 846, 860 (Tex. Ct. App. 2006).[15] The caselaw of a number of courts across the country

---

[15] While some courts have reached a different conclusion as to the admissibility of police reports under the past recollection recorded exception, these cases either ignore the legislative history of the exclusion for police observations or surmise that an officer's presence at trial resolves any cross-examination concerns. See United States v. Hayes, 861 F.2d 1225, 1230 (10th Cir. 1988) (tax payment records compiled by an Internal Revenue Service agent admitted as a business record because there was no evidence that the records were untrustworthy); United States v. Picciandra, 788 F.2d 39, 44 (1st Cir. 1986) (undercover drug enforcement agent report admitted under the past recollection recorded exception because it had "indicia of trustworthiness"); United States v. Sawyer, 607 F.2d 1190, 1193 (7th Cir. 1979) (revenue agent's report admitted under the past recollection recorded exception because the agent was available for cross-examination). As discussed infra, both the legislative history of the public records hearsay exception and Hawai'i law regarding the availability of a witness for

(continued . . .)

thus suggests a similar conclusion to our own--that is, that the public record hearsay exception offers the sole hearsay framework under which the admissibility of law enforcement reports may be admitted at trial.

## D. The History of the Public Records Hearsay Exception Supports Prohibiting the Admission of Police Reports Through Other Exceptions

The conclusions of the Davis and Pena-Gutierrez courts are unsurprising in light of the history of the public records hearsay exception. When considering the identical federal rule after which our exception was modeled, the United States Court of Appeals for the Second Circuit in United States v. Oates recounted that "an overriding concern of the Advisory Committee was that the rules be formulated so as to avoid impinging upon a criminal defendant's right to confront the witnesses against him."[16] 560 F.2d 45, 68 (2d Cir. 1977). The court explained that the language of the public records exception was amended during the drafting process to add the exclusion for "matters observed by police officers" to protect a defendant's

(. . . continued)

cross-examination strongly weigh in favor of prohibiting the admission of police reports as recorded past recollections.

[16] When enacting the Hawai'i Rules of Evidence, the legislature adopted the public records hearsay exception contained in the FRE verbatim, though the federal rule has since been amended nonsubstantively. See Oates, 560 F.2d at 66-67 (setting forth FRE Rule 803(8) as it was worded in 1977). The legislative history of the federal rule is thus especially persuasive in interpreting our own public records hearsay exception. See Fitzwater, 122 Hawai'i at 383 n.5, 227 P.3d at 549 n.5.

confrontation rights.  Id. at 69.  Significantly, the Second Circuit noted, the Senate attempted to limit the application of the exclusion by adding a proposed provision that "would have rendered the exclusion . . . ineffective in the event the author of the report was 'unavailable' to testify."  Id. (citing S. Rep. No. 1277 (1974)).  However, as detailed by the Oates court, the "attempt to emasculate" the exclusion was unsuccessful, and the unavailability provision was removed by the Committee of Conference.[17]  Id. (citing H.R. Rep. No. 1597 (1974) (Joint Explanatory Statement of the Committee of Conference)).

Expanding on the legislative history of the proposed provision, the Second Circuit stated that after the Committee of Conference submitted its final version of the rules to the Senate and the House of Representatives, Representative William Hungate presented the Committee's official report to the House.[18]  Id. at 70.  During his presentation, Representative Hungate

---

[17]    Both the Federal and Hawai'i Rules of Evidence consider a witness who does not have sufficient recollection to testify about the substance of a prior statement unavailable for purposes of hearsay analysis.  See FRE Rule 804(a)(3); HRE Rule 804(a)(3).  Thus, the reading into evidence of a police report authored by an officer who is unable to remember the substance of the events it details would fall squarely within the proposed unavailability limitation that was specifically rejected by the original drafters of the public records exception.

[18]    Representative Hungate was the Chairman of the House Judiciary Subcommittee on Criminal Justice, presided over hearings regarding the proposed Federal Rules of Evidence, was a floor manager for the legislation, and was a member of the Committee of Conference appointed to resolve the differences between the versions of the rules approved by the House and Senate.  Oates, 560 F.2d at 69-70.

explained that the Committee "rejected the Senate's attempt to create a new hearsay exception which would have permitted admission of police reports authored by officers unavailable to testify." Id. Representative Hungate told the House that "[a]s the rules of evidence now stand, police and law enforcement reports are not admissible against defendants in criminal cases." Id. (quoting 120 Cong. Rec. H12254 (daily ed. Dec. 18, 1974)) (emphasis added). Thus, the Oates court concluded that "it was the clear intention of Congress to make evaluative and law enforcement reports absolutely inadmissible against defendants in criminal cases," and "it must have been the unquestionable belief of Congress that the language of [Federal Rule of Evidence] 803(8)(B) and (C) accomplished that very result." Id. at 73.

The Second Circuit further noted that the legislative history specifically addressed the admission of police reports through exceptions other than the public records hearsay exception. Id. As the court related, Representative Elizabeth Holtzman expressed concern that a catchall hearsay exception would open "a 'back door' to [admission of] police reports and negate[] the conference committee's prior prohibition against admission of such evidence." Id. at 71 (quoting 120 Cong. Rec. H12255-56 (daily ed. Dec. 18, 1974)). The Oates court thus determined that the exclusion of police reports "applies with

26

equal force to the treatment of such reports under <u>any</u> of the other exceptions to the hearsay rule" because the admission of such reports under another exception "would serve to deprive the accused of the opportunity to confront his accusers as effectively" as the drafters intended.[19]  <u>Id.</u> at 78 (emphasis added).

The history of the public record exception clearly demonstrates that it was intended to render all police reports "absolutely inadmissible against defendants in criminal cases." <u>Id.</u> at 73.  Indeed, Representative David Dennis, who first introduced the exclusion for police observations, explained that the purpose of the exclusion was to "give the defendant the chance to cross examine [the police officer], rather than just reading [the officer's] report into evidence."  Jack B. Weinstein & Margaret A. Berger, 4 <u>Weinstein's Evidence</u> § 803(8), at 803-22 (1996).  This precise result of reading the contents of a police report into evidence occurs when the police report is admitted through the past recollection recorded hearsay exception.  <u>See</u> HRE Rule 802.1(4) ("If admitted, the memorandum or record may be read into evidence but may not itself be

---

[19]  The dissent characterizes our position as "rel[ying] heavily on the Second Circuit's analysis in <u>Oates</u>."  Dissent at 5.  But it is the legislative history of the federal public records hearsay exception that provides guidance for our holding, and this court has long recognized that "the history of the federal rule is highly persuasive as to the purpose of the Hawai'i rule."  <u>Cvitanovich-Dubie v. Dubie</u>, 125 Hawai'i 128, 147, 254 P.3d 439, 458 (2011).

27

received as an exhibit unless offered by an adverse party.").

Thus, the legislative purpose of the public records hearsay

exception would be vitiated if the State could use the past

recollection recorded exception as a "back door" to admitting

police reports.  See United States v. Blackburn, 992 F.2d 666,

671 (7th Cir. 1993) ("[I]f a document prohibited under [the

public records exception] can come into evidence under [the

business records exception], then the [public records

exception's] restrictions are rendered nugatory.").

### E. Admitting Police Reports as Recorded Past Recollections Produces Illogical Results

In addition to being unsupported by precedent and

contrary to the intent of our evidentiary rules, admitting

police reports through the past recollection recorded hearsay

exception leads to irrational results.  The HRE Rule 803(b)(8)

hearsay exception for public records and its exclusions apply

regardless of whether the declarant is available to testify.

Thus, admitting police reports under the HRE Rule 802.1(4) past

recollection recorded hearsay exception, which applies only when

a testifying declarant has "insufficient recollection to enable

the witness to testify fully and accurately," creates an

illogical dichotomy.  Documents that are wholly inadmissible

both when the authoring official is absent, and thus subject to

no cross-examination, and when the author testifies from

personal knowledge and is subject to full cross-examination, would be deemed admissible only when the author has insufficient recollection to testify fully and accurately about the events underlying the reports, making the official subject to only cross-examination that is ineffective at ascertaining the truth. Such a distinction is not rationally justified, and it is contrary to statements by multiple courts that the public records exception was "intended to bar the use of law enforcement reports as a substitute for the testimony of the officer." United States v. Sawyer, 607 F.2d 1190, 1193 (7th Cir. 1979).

The dissent argues that this extremely limited cross-examination is sufficient to satisfy any concerns the drafters may have had about the introduction of police reports. Dissent at 8-9, 13 n.4. This contention is plainly refuted in this case and decidedly incorrect as a general principle. A police officer's pro forma taking of the stand, as occurred here, does not eliminate the danger that the law enforcement exclusion in the public records exception was intended to address: a defendant being denied the right to cross-examine a police officer about the substance of the officer's report. Such reports are inherently less reliable than other witness recollections that are recorded soon after the events they recount, for police reports are created in an adversarial

setting for the primary purpose of substantiating a criminal charge against the defendant.  Only through meaningful cross-examination can a defendant test the accuracy of a police officer's account of events that took place in this context, and this cannot occur when an officer testifies to a lack of memory and simply recites the contents of the report to the factfinder.

The State in this case was essentially able to use Officer Ostachuk's report as a substitute for his testimony.  When the defense counsel attempted to cross-examine the officer about the SFST he conducted, the officer could not testify to any information about Abrigo's performance that was not contained in his report--a document that was prepared for the specific purpose of building a case against Abrigo.  Because of the officer's lack of memory, Abrigo did not have a meaningful opportunity to challenge any of the officer's observations and conclusions regarding the clues of intoxication that Abrigo allegedly displayed.  That is, the State convicted Abrigo on nothing more than a police report without affording him an adequate opportunity to challenge the officer's observations.  Abrigo's ostensible ability to question the officer's general credibility and methodology was a hollow substitute for cross-examination on the officer's actual basis for arresting Abrigo and charging him with a crime, and the process plainly did not offer any assurances of the report's reliability.

The dissent argues that our interpretation could adversely affect an OVUII prosecution by precluding the introduction of a police officer's report when the officer is unable to recall the details of the driver's SFST performance months after a stop.  Dissent at 3.  But the administrative difficulty of providing a prompt trial does not justify dispensing with the assurances of reliability inherent in meaningful cross-examination.  Moreover, the same result could occur in any trial in which a police report is admitted under the past recollection recorded hearsay exception, irrespective of the seriousness of the charges or the strength of the evidence against the defendant.  A defendant could be convicted of a major felony offense on the sole basis of a report authored by a police officer who is the only witness to the alleged crime, all without any opportunity to challenge the substance of the report through in-court cross-examination.  The injustice of an interpretation of our evidentiary rules that would allow a defendant to be convicted solely on the basis of a police report being read into evidence is manifest, and we are thus obliged to reject it.  See HRE Rule 102 (providing that the "rules shall be construed to," inter alia, "secure fairness in administration" and to promote the "growth and development of the law of

evidence to the end that <u>the truth may be ascertained and proceedings justly determined</u>" (emphasis added)).[20]

        The dissent also responds by quoting a passage from a treatise on evidence that argues that it is impractical to expect law enforcement officials to recall specific, detailed information such as "serial or license numbers, makes of cars, detailed descriptions of objects at crime scenes, or precise details about physical layout."  Dissent at 11 (quoting Christopher B. Mueller & Laird C. Kirkpatrick, <u>Evidence</u> § 8.51 (5th ed. 2012)).[21]  As an initial matter, this court has not yet

---

[20]    "In any event, such a reading would contravene the doctrine of 'constitutional doubt,' which dictates that, 'where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is [to] adopt the latter.'" <u>State v. Jess</u>, 117 Hawai'i 381, 399–400, 184 P.3d 133, 151–52 (2008) (quoting <u>In the Interest of Doe</u>, 96 Hawai'i 73, 81, 26 P.3d 562, 570 (2001)).  Under our current caselaw, the admission of a witness's prior out-of-court statements does not violate a defendant's confrontation and cross-examination rights even when the witness is completely unable to remember the subject matter of the prior statement.  <u>See State v. Fields</u>, 115 Hawai'i 503, 517, 168 P.3d 955, 969 (2007).  However, the continuing viability of this precedent has been called into doubt by our more recent holding that the confrontation clause of the Hawai'i Constitution is "satisfied" only by "sufficient and meaningful" cross-examination.  <u>State v. Nofoa</u>, 135 Hawai'i 220, 230-31, 349 P.3d 327, 337-38 (2015).  It is thus noteworthy that, in addition to all of the stated reasons underlying our analysis, our holding is consistent with our duty to adopt an evidentiary interpretation that avoids addressing a grave constitutional question.  That is, by concluding that Officer Ostachuk's report was inadmissible on the basis of our evidentiary rules, we render it unnecessary to address Abrigo's contention that the officer's near-total lack of recollection violated his constitutional right to confront and cross-examine the witnesses against him.

[21]    The treatise on which the dissent relies also counsels that the exclusion of law enforcement reports in the public records hearsay exception should not be used to exclude various public records for which another "narrow and specific" hearsay exception applies in the rare instance in which they are authored by police.  Christopher B. Mueller & Laird C. Kirkpatrick, <u>Federal Evidence</u> § 8:90 (4th ed. 2018).  These include the "vital statistics" of birth, death, or marriage that are typically admissible under the federal

(continued . . .)

addressed the extent to which the law enforcement exclusion in the public record exception bars the admission of purely routine observational data.  See Davis, 140 Hawai'i at 259 n.15, 400 P.3d at 460 n.15 (declining to reach the issue).  Assuming such informational data cannot be admitted through this route or by properly authenticated documentary evidence, see HRE Rule 901, a police report or any other document, photograph, or object may be used to refresh an officer's memory both before testifying and while on the stand.  See HRE Rule 612.  Only when the officer's recollection of the events underlying the report is so inadequate that reviewing the report or other refreshing item is unable to bring these details to mind and other means are not available would the admissibility of routine observational data under HRE Rule 803 require consideration.  This rare scenario cannot drive the result of our analysis when the alternative-- depriving the defendant of meaningful cross-examination of a

_____

(. . . continued)

equivalent of HRE Rule 803(b)(9) and a certificate indicating the absence of a public record that is usually admissible under the federal equivalent of HRE Rule 803(b)(10).  Id.  Although we need not now decide the full extent of law enforcement records excluded by the public records hearsay exception, the treatise's position is consistent with the longstanding maxim of statutory interpretation that, "where there is a 'plainly irreconcilable' conflict between a general and a specific statute concerning the same subject matter, the specific will be favored."  Richardson v. City & Cty. of Honolulu, 76 Hawai'i 46, 55, 868 P.2d 1193, 1202 (1994) (quoting Mahiai v. Suwa, 69 Haw. 349, 356-57, 742 P.2d 359, 366 (1987)).  Thus, the more specific inclusion of vital statistics would likely control over the more general exclusion of law enforcement reports included in the public record exception.  Similarly, the more specific exclusion of law enforcement reports takes precedence over the more general inclusion of a witness's recorded past recollections.

significant State's witness--is the outcome of the dissent's position.  To hold that reading the contents of the police report is admissible in this case, in which the witness was the only source of evidence against the defendant, would establish a precedent for trials to be determined on the basis of police reports and not testimony, ultimately compromising the fundamental rights of defendants and the ability of factfinders to accurately determine the issues before them.

Thus, we now formally hold that police reports may not be admitted against a defendant in a criminal case under the HRE Rule 802.1(4) past recollection recorded hearsay exception.  We conclude that Officer Ostachuk's report could not have been admitted under the public records exception, and thus the past recollection recorded exception could not serve as a "back door" to read the report into evidence.  Accordingly, the ICA erred in holding that the content of Officer Ostachuk's report was admissible.[22]  Because Officer Ostachuk's testimony was the only evidence presented by the State, Abrigo's conviction cannot stand.

---

[22]    In holding that Officer Ostachuk's testimony was admissible under the past recollection recorded exception, the ICA relied on State v. Bloss, 3 Haw. App. 274, 649 P.2d 1176 (1982).  In Bloss, the ICA held that a police officer could read a parking citation that he issued into evidence under the past recollection recorded exception.  Id. at 278, 649 P.2d at 1179.  Bloss did not evaluate the legislative intent of the public records exception, nor did it discuss the public records exception at all.  We thus overrule Bloss to the extent that it may be read to allow such a record to be admitted under the past recorded recollection exception.

## IV. CONCLUSION

Based on the foregoing, the ICA's judgment on appeal is vacated, the judgment of conviction is vacated, and the case is remanded to the circuit court for further proceedings consistent with this opinion.

Susan Arnett                           /s/ Sabrina S. McKenna
Taryn R. Tomasa
for petitioner                         /s/ Richard W. Pollack

Brian R. Vincent                       /s/ Michael D. Wilson
For respondent

